Putnam J.
delivered the opinion of the Court. The statute establishing the city of Boston was passed on the 23d of February, 1822, and by the 31st section it was to be void, unless the town should by a written vote adopt the same within twelve days. That was accordingly done on the part of the town, and the act therefore went into operation immediately afterwards.
By the first section, the town is made a city ; and by force of the act, the inhabitants divided the city into wards. This took place before the indictment was found. Boston then existed as a city ; and there is nothing uncertain or unintelligible in the form of the indictment.
And the objection which has been made as to the description of *he subject matter of the larceny cannot prevail. It is said that barilla is not an English word ; and several English dictionaries have been mentioned which do not contain it. But it is found in Rees’s Cyclopaedia, — in the act of Congress it is mentioned as merchandise to be imported free from duty, — and in Ure’s Chemical Difctionary it is also described as a term given in commerce to the impure soda imported from Spain, &c.
*389 A more important objection was made, namely, that the best evidence had not been produced, and therefore that the conviction was not warranted. It is said that the truckman who carried the barilla to and from the mill ought to have been produced, to prove that it was not adulterated in the transportation.
The question upon this part of the case is, whether any other evidence would have been equivalent to that which the truckman might be supposed to have given. Of that we have no doubt. The fact to be proved was, that the defendant stole part of the barilla. He is- not charged for the fraud of mixing any other substance of inferior value with it, but for a larceny. Now if the defendant had confessed the fact, that would surely have been sufficient evidence. What evidence was in fact produced is not judicially before us ; it was sufficient to satisfy the jury, and did not depend upon the evidence which the truck-man may have been supposed to have possessed. It is not like the case where a signature is to be proved by a subscribing witness, who might be produced, and who alone knows the fact to be established.
In the case of the Commonwealth v. Kinison, to which we have been referred, the fact to be proved was the identity of a counterfeit bill ; it had no artificial marks, and had been out of the possession of the witness and in the possession of the magistrate for two or three weeks. The magistrate was not called ; and it was held very properly, that, as there were no private or artificial marks on the bill, it was not identified without the testimony of the magistrate. If there had been any artificial marks, to which the witness who was produced could have testified, that would have been sufficient.
In another case cited by the defendant’s counsel, Williams v. The E. I. Company, the party did not produce the best evidence in his power, and he failed of course to recover. The fact to be proved was, that the defendants had put on board of the plaintiff’s ship a quantity of oil and varnish of an inflammable nature, without giving him any notice of it, by reason of which the ship was burnt. Two persons only knew whether notice of the inflammable nature of the varnish was given, namely, the mate who received it, who was dead, and the military conduc *390 tor who delivered it, and who was alive and in the power 0p t}le party t0 produce. The evidence to prove that fact (upon which the plaintiff’s action depended) arose from the presumption that it was so, because no person who was on board of, or belonged to the ship, had any such notice of the inflammable nature of the material. But that was justly held to be ■evidence less satisfactory than could be given by the military conductor, who knew certainly how the fact was.
The gist of the prosecution in the case at bar is the stealing, not the adulteration of the barilla. We think that the objection which has been made upon this point of the cause ought not to prevail. But the main question still remains to be considered; that is, whether the facts which have been proved will warrant a conviction for larceny.
Before .proceeding to that, I would remark that the question has been argued by the counsel for the defendant with great learning and ability, and that we have been much assisted’ by their researches.
To constitute the crime of larceny, there must be a felonious taking and carrying away of the goods of another. It- is supposed to be, vi et armis, invita domino. But actual violence is not necessary ; fraud may supply the place of force.
The jury have found that the defendant took the goods with an intent to steal them ; and the verdict is well warranted, if, at the time the defendant took them, they were not lawfully in his possession with the consent of the owner, according to a subsisting special contract, in consequence of an original delivery obtained without fraud. If that was the case, the inference which the counsel for the defendant drew would follow, that such a taking would not be felony, but a mere breach of trust for which a civil action would lie, but concerning which the public have no right to inquire by indictment.
The counsel for the defendant have referred us to 13 Ed. 4, fol. 9, as the authority upon this point. The case was as follows. A carrier had agreed to carry certain bales of goods which were delivered to him to Southámpton, but he carried them to another place, broke open the bales, and took the goods contained in them feloniously, and converted them to his own *391 jse. If that were felony or not, was the question. It was first debated in the Star Chamber, where four of the judges held it to be felony, but for different reasons ; and one of the judges (Brian) strenuously insisted that it was neither felony nor trespass, because the defendant had the possession by a lawful de livery. The chancellor thought it was felony, and should be determined according to the intent. Molineux thought it might be felony or trespass, according to the intent, and seems to put the case upon the ground of a determination of the contract. “ As if he who did the act does not pursue the purpose for which he took the goods ; as if a man distrain for damage-feazonce, or rent arrere, and afterwards sell the goods, or kill the beasts, there is a tort now, where at the beginning it was good. So, although it was lawful to carry the goods ut supra, yet as he took the goods to another place afterwards, he has not pursued the original purpose, and so by his own act afterwards it shall be adjudged felony or trespass, according to his intent.” Vavisour did not consider it as a bailment, but that the goods were delivered upon a bargain ; that his original intent was to steal and not to carry the goods. “ His conduct afterwards proves (says Vavisour) that he took them as a felon, and to another intent than to carry ” &c. Choke put the case upon the breaking of the bales and taking out the contents. His opinion was, that if the party had sold the entire bales it would not have been felony, “ but as he broke them, and took what was in them, he did it without warrant,” and so was guilty of felony.
Afterwards this matter was argued before the judges in the Exchequer Chamber, and this proposition was held by all, (excepting Nedham,) viz. “ that where goods are delivered to a man, he cannot take them feloniously.” Nedham thought that “ he might take them feloniously as well as another.” Brian still persisted in his opinion, and said that the breaking of the bales did not make it felony. But afterwards the judges made a report to the chancellor that the opinion of the majority of them was, that it was felony.
I have been thus minute in examining this case, as it is referred to as the foundation upon which many subsequent decisions rest. It will be perceived that here may be found the distinctions which are recognized in the text books upon th s *392 subject. Thus, if the party obtain the delivery of the goods originally without an intent to steal, a subsequent conversion of them to his own use while the contract subsisted would not be felony ; but if the original intent was to steal, and the means used to obtain the delivery were merely colorable, a taking under such circumstances would be felony. So if the goods were delivered originally upon a special contract, which is determined by the fraudulent act of him to whom they were delivered, or by the completion of the contract, a taking anima furandi afterwards should be adjudged to be felony.
In the application of these general rules to the cases which arise, it is obvious that shades of difference, like the colors of the rainbow, so nearly approach each other, as to render it extremely difficult to discriminate them with satisfactory precision. The humane rule of the law is, that in cases of doubt, the inclination should be in favor of the defendant. The seeming, perhaps real, contradictions to be met with in the English decisions may have been influenced by the desire to save human life.
The case of Rex v. Channel, 2 Str. 793, cited for the defendant, was an indictment against a miller employed to grind wheat, stating that he with force and arms unlawfully did take and detain part of it. The indictment was held bad upon demurrer. The reasons assigned in the book are, that there was no actual force laid and that this was a matter of a private nature; but a better reason seems to us to have been, that there was no averment that the defendant took the wheat feloniously.
The case of The King v. Haynes, cited for the defendant from 4 M. & S. 214, was an indictment for a fraud against a miller for delivering oatmeal and barley, instead of barley, which was sent to be ground. It is not for a felony. The court thought no indictable offence was set forth. The question whether the miller had taken any of the corn which was sent to be ground, with an intent to steal it, was not then under con sideration.
In the case at bar, the goods came lawfully into the hands of the defendant by the delivery of the owner. If he is to be convicted, it must be on the ground that he took the goods as a felon after the special contract was determined.
*393 1 will refer to some cases which illustrate this point. Thus, in Rex v. Charlewood, before Gould J. and Perryn B., 1786, cited in East’s Cr. L. 689, reported in Leach, case 180, the jury were instructed, that if they thought the prisoner performed the journey for which he hired the horse, and returned to London, where, instead of delivering it to the owner, he after-wards converted it to his own use, that might be felony ; for, said the court, “ the end and purpose of the hiring of the horse would be over.”
In Kelyng, 35, a silk throwster had men to work in his own house, and delivered silk to one of them to work, and the workman stole away part of it ; and it wras held to be felony notwithstanding the delivery. East, in his Crown Law, supposes that if the silk had been delivered to be carried to the house of the workman, and he had there converted a part of it to his own use, it could not have been felony ; but that as it was to be worked up in the house of the owner, it might be considered as never in fact out of his possession. But Kelyng seems to put the case upon the ground of the special contract, “ that the silk was delivered to him only to work, and so the entire property remained in the owner.”
But whatever may be the true ground of decision in that case, there is a case in 1 Roll. Abr. 73, PI. 16, which is recognized as good law by Hawkins, East and other writers, which is very applicable to the case at bar. “ If a man says to a miller who keeps a corn mill, Thou hast stolen three pecks of meal, an action lies ; for although the corn was delivered to him to grind, nevertheless if he steal it, it is felony, being taken from the rest.” Langley v. Bradshawe, in Error, 8 Car. B. R. That decision proceeded upon the ground of a determination of the privity of the bailment. Hawkins observes (bk. 1, c. 33, § 4) that such possession of a part, distinct from the whole, was gained by wrong, and not delivered by the owner ; and also, that it was obtained basely, fraudulently and clandestinely.
This remark is peculiarly applicable to the case at bar ; for tljere is no evidence that the owner intended to divest himself of his property by the delivering of it to the defendant. The defendant did not pursue the purpose for which it was delivered *394 to him, but separated a part from the rest for his own use, without pretence of title ; and by that act the contract was determined. From thenceforward the legal possession was in the owner, and a taking of the part so fraudulently separated from the rest, anima furandi, must be considered as larceny.[1]

 See Rex v. Brazier, cited in 2 Starkie on Evid. 838.