# REPORTS

OF

## CASES ARGUED AND DETERMINED

## AT JANUARY TERM, 1855.

### CASE *vs.* THE STATE.

1. Under an indictment for larceny from a store-house, (Code, §§ 3170, 3175,) if the jury assess the aggregate (instead of the separate) value of the stolen articles, the irregularity is not available to the defendant, either on motion in arrest of judgment, or on error.
2. If .the defendant was a mere servant of his employer, having charge of the store-house and goods without any authority to sell, he may be convicted under section 3170 of the Code; but if he was the agent of his employer, and had authority as such agent to furnish goods to customers, he can only be indicted and convicted under section 3143. If, however, he obtained his agency with the felonious intent of stealing the goods, he may be convicted under section 3170.

FROM the City Court of Mobile, on points reserved as novel and difficult. Hon. ALEX. MCKINSTRY, presiding.

THE indictment in this case, which was found at the October term, 1854, of the City Court, charges, "that John Case feloniously took and carried away from a store-house" certain enumerated articles, whose value is specified, and which are alleged to be the "personal property of William S. Crockett." Having been found guilty by the verdict of the jury, the defendant moved to set aside the verdict, and also in arrest of judgment, on the ground that the jury had failed to assess the value of each article separately, but had assessed their aggregate value at $18. This motion the court refused, but

reserved the question presented as novel and difficult under the Code, and certified it to the Supreme Court for decision.

The bill of exceptions also discloses the following facts:

"The State introduced one Crockett as a witness, who testified, that, seeing an advertisement in the newspapers by the prisoner offering to sell out his store, he called upon him about the last of June or first of July, 1854, to make inquiry respecting it; that he had never seen the prisoner before to know him; that he called again on the prisoner on the third of July, when the prisoner agreed to take, and Crockett to give, $800 for the goods in the store, in a lump as they were— $400 cash, and the balance to be secured by two notes, of $200 each, with security, payable the first of November and the first of September ensuing; that the parties then immediately proceeded to take an inventory of the goods, in order that Crockett might learn the selling prices; that this labor was concluded on the morning of the 4th of July, when Crockett paid, and Case accepted, the $400 in cash; that while the negotiations for the purchase of the goods were pending, on the morning of the third of July, before closing the bargain, the prisoner, at the request of Crockett, sent for the owner of the house in which the goods were, viz., Mrs. Julia Soto, from whom Case had rented it, in order that Crockett might rent the said house, which consisted, besides the room devoted to the store, of apartments above, used as a dwelling-house and then occupied by the prisoner's family,—it being the understanding of the parties, that the prisoner's family were to move out, and Crockett's to move in; that Mrs. Soto did not come, but her son came, and, in the presence of the prisoner, consented that Case might rent the house, and Case then hired the house to Crockett for the balance of the year, the rent to commence from the first of July, 1854; that Crockett has ever since, pursuant to said contract, paid the rent to Mrs. Soto; that after the $400 in cash were paid, as above stated, Crockett remained about one hour in the store by himself, officiating behind the counter and supplying goods to customers; that the prisoner then came in, and asked Crockett to go down town with him, to have a bill of sale drawn, and the notes executed, to which Crockett agreed; that Crockett proposed to shut up the store during his ab-

sence, when the prisoner suggested, for Crockett's benefit, that his (the prisoner's) wife had better tend the store for that interval, lest customers might be diverted from the store by seeing it closed; to which proposal Crockett assented, and proceeded down town with the prisoner; that the parties were absent on their errand until late in the afternoon, without effecting their purpose, owing to the prisoner's not succeeding in getting such a bill of sale drafted as he would express himself satisfied with, when finally Crockett returned to the store alone, and remained there some time, and sold some goods to customers; that Crockett then, being about to go home, said something to the prisoner about shutting up the store, when he again suggested that it would be better for him (Crockett) to leave him (prisoner) in charge during the evening to keep it open, so that the store might not lose custom; that Crockett assented, and went home, and on the next morning early (the fifth of July) he came to the store, and was admitted by the prisoner, who unlocked the door from the inside; that the key had never been delivered to him by the prisoner; that when he came in, he saw that some goods which were there the day previous were missing, but he said nothing about it at that time; that about 9 o'clock the prisoner requested him again to go down town again to execute the notes, saying that he wanted the matter closed, but Crockett refused to go until some of his family, who were to move into the dwelling part of the house that day, came; that the prisoner expressed himself urgently to Crockett, when the latter offered to pay the cash then rather than go out, and finally they went down town together, to the store of Chamberlain, whom Crockett had proposed as his endorser; that Chamberlain declined to endorse the notes, but stated to the prisoner, that he was acquainted with Crockett, and that the notes should be paid; that the prisoner expressed himself satisfied with this, and executed a bill of sale of the goods, which was left with Chamberlain and executed in the absence of Crockett, who went back to the store where the goods were immediately after executing his notes, and before the bill of sale was executed by the prisoner.

"Chamberlain stated, on his examination, that he was under the impression that the understanding of the parties was,

that the notes, with security, should be given before the bill of sale was executed, but he could not say what was the understanding of the parties in regard to the possession of the goods in the meantime. Crockett testified, that he considered his possession complete from the time he paid the $400 ; that the prisoner never came about the store after the fifth of July but busied himself, as he had been previously, in removing, to make room for Crockett's family, some of his furniture from the larger room of the dwelling part of the house, to a smaller room, which it had been agreed the prisoner should retain to put his furniture in until he had a chance to carry it away ; that the prisoner's family left the house on the 6th or 7th ; that up to the 5th of July, the keys of the house and the house continued as usual in the possession of the prisoner.

"There was other evidence. On this evidence, the prissoner's counsel requested the court to charge the jury, that although they may believe that the contract was complete on the 4th of July, and the title to the goods vested in the prosecutor, and the defendant stole the goods ; yet, if they believe that the control of the house and store was left with the prisoner until the 5th of July, then, in the interim between the 4th and 5th, if the defendant took the goods from the store-house, of which he had the key, possession, and control, then he is not guilty of stealing from a store-house, within the meaning of section 3170 of the Code. This charge the court refused, and charged the jury, among other matters, that if they believed from the evidence that the defendant was guilty of the larceny of the goods, as charged in the indictment, they must ascertain whether they were taken from a store-house or not—if not taken from a store-house, the offence could not be more than a simple larceny ; but if they found that the house was a store-house, they must then ascertain whether the larceny was committed before or after the store-house was delivered to Crockett by Case—if they found that the larceny was committed before the hiring and delivery of the store-house to Crockett, the defendant would be guilty of simple larceny only ; if, however, they found that the larceny was committed after the store-house had been rented and delivered to Crockett, then the defendant would be guilty of the statutory offence of larceny from a store-house.

" The presiding judge, being of opinion that the questions arising on the refusal to charge as requested and the charges given are novel and difficult, and should be reserved for the opinion of the Supreme Court, has directed the execution of the sentence to be delayed until the 10th day of March, A. D. 1855, and, at the request of the prisoner, here refers the questions therein for the consideration of said Supreme Court."

The refusal to set aside the verdict and arrest the judgment, the charge given, and the refusal to charge as requested, are now assigned for error.

E. S. DARGAN, for the prisoner :

[Mr. Dargan argued orally at the bar the point presented by the motion to set aside the verdict because the jury had assessed the aggregate value of the stolen articles, but he submitted no brief of his argument on that point. He also submitted a written argument, in which he made the following points.—REP.]

Under the Code, it is made the duty of this court, to examine all the errors in the record, even though they are not specially assigned; and the motion in arrest of judgment tests the sufficiency of the indictment. Is it not defective, in that it does not allege who was the owner of the house from which the goods were stolen? Such is certainly the law in England.—Barb. Crim. Law, 187 ; 3 Chitty's Crim. Law, 949. The Code does not in language require that the owner of the goods should be alleged, yet it is necessary that their ownership should be averred ; so, also, it does not in words require an allegation of the ownership of the house, yet it is necessary.

Section 3143 of the Code punishes all clerks and agents who fraudulently convert to their own use the goods of their masters which have come to their possession in consequence of their employment. It is the employment, and not the compensation, that determines the question of the relation existing between the clerk, or agent, and the owner of the goods. That the want of compensation for the agency does not affect the relation, is fully established by the following cases : Rex v. Smith, 1 English Crown Cases, p. 516 ; Bar-

ker's case, Dow. & Ry. 19, referred to fully by Mr. Roscoe in the last edition of his work on Criminal Evidence, (top) pp. 440, 441 ; 6 Car. & P. 626. Neither can the length of time the relation has existed vary the case. The sole question is, Did the relation exist at the time of the conversion ? If it did, the party must be liable. The true distinction between an agency and a bare charge is this : one has powers, the other not ; and these powers cannot be made to depend upon the compensation the agent is to receive for executing them, nor to the length of time such powers have existed. Is there any evidence here, as disclosed by the bill of exceptions, which tends to prove that Case was entrusted with the power of an agent? It is shown that he and his family occupied the room above the store,—that the key was left with him, and the store open and in his charge, *to prevent the loss of custom.* This being the object and reason of the power confided to him to keep open the store, that power, to be effectual, must enable him to carry out that object ; for it is a correct rule, that a general grant of a power, unless there are express restrictions that defeat the exercise of the power, must be so construed as to carry out the object of the grant. If the object here of leaving the store open in charge of Case, and the key in his possession, was to prevent the loss of custom, how could this be done without supplying such customers as might call with goods ? The evidence, then, at least tends to show that the defendant was authorized, if it became necessary to prevent the loss of custom, to sell goods ; and if so, he was a clerk or agent under section 3143, and cannot be convicted under section 3170. The charge, therefore, as it withdrew from the jury the consideration of the question of agency *vel non,* and assumed that the defendant might be convicted independently of that question,—was erroneous.

M. A. BALDWIN, Attorney General, *contra :*

1. The offence was either larceny, or embezzlement. Could the defendant be convicted for embezzlement under section 3143 of the Code? Our statute is very nearly the same as the 7th and 8th Geo. IV. ch. 29, § 47, cited in Roscoe's Criminal Law, p. 437 : and it has been held under that statute, that no casual procuring a person to receive a sum of money

will render him " a person employed for the purpose, or in the capacity, of a clerk."—Cases of Nettleton, Freeman and Burton, reported in Roscoe's Criminal Law, pp. 437 to 444 ; all of which were held not to be cases of embezzlement. In the case at bar, the prisoner's attention to the prosecutor's store was a mere casual one : he was not employed as clerk, or agent, and therefore it cannot be embezzlement.

2. Is it a case of larceny ? It may be said that the possession was lawful, and that no subsequent conversion of the property could make it larceny, unless the *animus furandi* existed at the time the prisoner came into possession ; and that this is the law, is not intended to be denied. It is a clear maxim of the law, (2 East's P. C. 564, 682,) that when one has the bare charge or custody of the goods of another, the legal possession remains in the owner ; and the party may, in fraudulently converting the same to his own use, be guilty of trespass and larceny. Thus, a butler, who commits larceny of his master's plate ; a shepherd, of the sheep ; a servant, of the goods entrusted to his possession.—The People v. Call, 1 Denio 120; United States v. Clew, 4 Wash. C. C. 700; State v. Self, 1 Bay 241 ; Commonwealth v. Brown, 4 Mass. 580 ; State v. Gorman, 2 Nott & McC. 90 ; Commonwealth v. James, 1 Pick. 375 ; Roscoe 600 ; 1 Hale's P. C. 505 ; 1 Leach 266.

3. If it be larceny, is it larceny from a store-house under section 3170 of the Code? The case of Chambers v. The State, 6 Ala. 856, is not applicable to this : that case was under a statute which required an entry into the house ; and the prisoner being a lodger, the court held that an indictment would not lie where the entry was permissive.—Clay's Dig., p. 425, § 55. But our statute against larceny from a store-house, &c., is very similar to the English statute of ·12th Anne, st: 1, ch. 7, (cited in 2 East's P. C. 629,) and does not require an entry ; and, like that, it was made to guard against servants and clerks, as well as strangers.

4. Stealing from a dwelling-house by the owner of the dwelling, has been held larceny under the statute 7th and 8th Geo. IV. ch. 29, § 12.—1 Russ. on Crimes, p. 853 ; 1 Car. & Kir. 147. It may be doubted whether the authorities generally go to that extent, but they certainly include all other per-

sons than the owners themselves.—Roscoe, p. 597 ; 1 Russ. 417 ; 1 Moody's C. C. 89. In this case, the prisoner was not the owner, but merely the occupier of the up-stairs portion of the house.

5. It is not necessary that the value of the goods should be assessed at all, much less each article separately : it has nothing to do with the prisoner's guilt.—13 Ala. 157.

CHILTON, C. J.—The prisoner was indicted and convicted of larceny from a store-house. Several articles, consisting of shoes, thread, cloth, &c., are alleged to have been feloniously stolen by him. The jury found the aggregate value of the goods to be eighteen dollars; but did not assess the separate value of any article. The prisoner moved to arrest the judgment for this reason, but the court overruled his motion, and certified the point to this court.

We think the decision of the court upon this point was correct. There is no essential difference between the provision contained in the Code, and the statute contained in Clay's Digest, and which we construed in Jones v. The State, 13 Ala. 153. In that case, no value was found ; here, the aggregate value. As the object of the statute was, to enable the court to render judgment against the prisoner in favor of the party to whom the goods belonged, and as no judgment can be rendered unless the verdict finds the separate value of each article, the two cases stand upon the same ground. In neither could a judgment for the price of the goods be rendered against the prisoner. But to allow *him* to take advantage of this, when the omission has not even the most remote bearing upon his guilt or innocence, and when he is put in a better condition by the omission, would be to disregard the numerous decisions of this court which hold, that a party cannot reverse a judgment which could not possibly have worked any injury to him.

2. As respects the ruling of the primary court in the instructions given to the jury : We think there was some evidence *tending* to prove that the prisoner was the agent of Crockett to whom he had sold the goods. Whether this evidence was sufficient to establish this fact, was a question which the jury should have passed upon, and which is virtually excluded from their consideration by the charge.

If the prisoner was a mere servant of Crockett, having the charge of the goods without authority to dispose of them for Crockett and as his agent, then he is properly convicted under this indictment; but if he was Crockett's agent, with power not only to keep the store open that customers might not be lost to the establishment, but to furnish goods to such customers in behalf of his principal, Crockett, then he falls within the influence of section 3143 of the Code, and must be tried under that section.

The line of distinction between a servant and an agent, who comes under the character of bailee, as respects the offence of larceny, is not very clearly drawn by the books; yet they all agree, that very important results depend upon it. If a servant steal the goods of his master, left in his charge, he was by the common law guilty of larceny. If, however, an agent who is a bailee embezzle them, not breaking the bulk, he was considered as guilty of a breach of trust merely.

Without entering at large upon the discussion of the distinction in this place, it may be sufficient to say, that if the goods were left in charge of the prisoner merely to keep with the store-house or room, and without any superadded duty respecting them, (as, for example an authority to sell and dispose of them,) he must be regarded in the light of a servant; but if, in the contemplation of the parties, the prisoner had authority to proceed and sell the goods to customers, on behalf of the prosecutor, Crockett, under a contract, express or implied, to account for the proceeds, we are unable to perceive upon what principle he could be distinguished from agents or factors, *pro hac vice*, charged with the sale of merchandise as in ordinary cases. It does not require that there should be a special contract, fixing upon compensation, or limiting the period for the termination of the agency. We must have regard to the nature and character of the service or acts to be done; we must determine whether the prisoner was substituted, in the matter of the custody and sale of the goods, in the place of the principal, invested with discretion in the transaction of the business as his agent, or bailee, and binding the principal by his acts done within the scope of his employment; or whether, as a mere servant, he was to act as he was acted upon, or directed by, the master—in other words, whether he

had more than the bare charge of the house and goods to keep them for the master, and to abide his bidding in reference to them.—3 Archb. Cr. Pl., (by Waterman,) pp. 443, *et seq.*

The court lost sight of this distinction in its charge, and the effect of the charge is, to exclude from the jury the consideration of the evidence tending to prove an agency, and in this view, such instruction was erroneous.—Dill, guardian, &c., v. Camp, 22 Ala. 249 ; Edgar v. McArn, *ib.* 796 ; Holmes v. The State, 23 *ib.* 17.

If the prisoner was an agent, as contemplated by section 3143 of the Code, he must be convicted, if at all, under that section. He is then guilty of petit or grand larceny according as the jury may ascertain the value of the articles stolen. On the other hand, if he be a mere servant, and not an agent within the meaning of the section above referred to, he may be found guilty under section 3170, for stealing from a storehouse. He is also guilty under this last section, if *at the* time he obtained his agency he did so with the felonious intent of stealing the goods.—2 Waterman's Archb., p. 384, note.

Judgment reversed, and cause remanded.