## ABRAMS v. THE STATE. OSBURN v. THE STATE.

1. The Supreme Court is bound to take notice of who are the public officers of this State, where the law requires such officers to be commissioned by the Governor.

2. Justices of the peace are required to be commissioned by the Governor.

3. The letters " J. P.," following the name of a person affixed to the jurat of an affidavit, are sufficient to designate the official character of such person as a justice of the peace; and if the name is of one who is a commissioned justice of the peace of this State, it is immaterial that it does not appear from the face of the affidavit where the same was executed. Until the contrary appears from the affidavit, or otherwise, the presumption would be that it was executed in this State, and in a place in this State where such an officer would be authorized to administer such an oath.

4. Where one borrows another's property, with no intention, at the time, of converting it to his own use, a conversion thereafter pursuant to a subsequently formed intent is not simple larceny.

5. Evidence that a person under arrest for crime had expressed a desire, out of court, to plead guilty in order that he might begin to serve his sentence, will authorize a charge on the subject of confessions.

6. It was erroneous, under the peculiar facts of this case, to fail to instruct the jury distinctly that, though one of the accused were found guilty, the other might nevertheless be acquitted.

Argued October 19, — Decided November 10, 1904.

Indictments for larceny. Before Judge Henry. Floyd superior court. September 5, 1904.

Abrams and Osburn were jointly indicted for simple larceny, the specific charge being that they took and carried away, with intent to steal the same, a certain mule, the property of Mrs. M. A. Kerr. They were tried together, and both were convicted. Each filed a separate motion for a new trial, the grounds of the two motions being identical. Both motions were overruled, and each of the accused excepted. The evidence shows that the accused had been employed by Mrs. Kerr as farm hands; that on Sunday Osburn requested her to lend him the mule described in the indictment, stating that he wanted to take a trip and that Abrams would go with him; that they hitched the mule to a buggy secured from Mrs. Kerr's son-in-law, and drove away; that they did not return at the appointed time; and that they endeavored to sell the mule and buggy, and were arrested several miles away from Mrs. Kerr's home and the place where they stated to her they intended going. There was also evidence that the accused admitted that they carried the mule and buggy

to Atlanta and tried to sell it; and that, when in jail, they stated they wanted to come out and plead guilty. ·The motion for a new trial in each case complains, that the court charged upon the subject of confessions; that he failed to instruct the jury distinctly that they might acquit one of the accused even though the other was convicted; and assigns error upon the following portion of the charge: " If these defendants borrowed this mule from the owner in good faith, intending to make a certain trip with it, and if thereafter the animus furandi, as it is called, the mind .of the thief, came to them, and they then thereafter made up their minds to take and carry it away, and did take and carry the mule away with intent to steal it, and if that occurred in this county, they would be guilty."

The pauper affidavit made in this case to avoid·the payment of costs accruing in the Supreme Court was properly entitled in the case, but it did not appear where it was executed. The jurat was signed, " Walter Harris, J. P."

*M. B. Eubanks*, for plaintiffs in error.
*Moses Wright, solicitor-general*, and *G. A. H. Harris*, contra.

COBB, J.   The instruction on the subject of criminal intent was unquestionably erroneous.   In those offenses where intent is an element, the intent and the overt act must concur in point of time, or, in the language of the Penal Code, "there must be a union or joint ·operation of act and intention." § 31.   Hence it is, that if one lawfully obtains possession of another's property, with no intent at the time to steal it, he is not guilty of simple larceny, although he may afterwards convert the property pursuant to a subsequently formed intent.   18 Am. & Eng. Enc. Law (2d ed.), 506, and numerous cases cited in note 6; Clark's Crim. Law (2d ed.) pp. 56, 297.   See also, in this connection, *Harris* v. *State*, 81 *Ga.* 758; *Mobley* v. *State*, 114 *Ga.* 544; *Johnson* v. *State*, 119 *Ga.* 563.   Where the original taking was a trespass, the authorities differ as to whether a conversion pursuant to a subsequently formed intent to steal would be larceny. See 18 Am. & Eng. Enc. Law (2d ed.), 507–508.   This question is not involved in the present case, because here the taking was with the express consent of the owner.   The expression of a desire to plead guilty, when made out of court, is in effect a

confession of guilt, and is admissible in evidence.    Whether, when such an expression is made in court, either to the judge or to some one acting in behalf of the court, it would be admissible as a confession, is not now determined.    See, in this connection, *White* v. *State*, 51 *Ga.* 289 ; State *v.* Briggs, 85 Iowa, 417 (9), 424; Rice *v.* State, 22 Tex. App. 654; 4 Cyc. 473, and cit. Hence there was no error in charging on the subject of confessions.    The court should also, under the peculiar facts of this case, have instructed the jury distinctly that they might acquit one of the accused though the other was convicted.

The rulings in the headnotes on the sufficiency of the pauper affidavit need no elaboration.

*Judgment in each case reversed.    All the Justices concur.*