**UNITED STATES of America**

v.

**James Vernon TURLEY.**

**Crim. No. 23513.**

United States District Court
D. Maryland, Criminal Division.
May 18, 1956.

528

George Cochran Doub, U. S. Atty., and William F. Mosner, Asst. U. S. Atty., Baltimore, Md., for plaintiff.

Fenton L. Martin, Baltimore, Md., for defendant.

THOMSEN, Chief Judge.

The motion to dismiss the information in this case raises the question whether an automobile is "stolen", within the meaning of Title 18 U.S.C.A. § 2312, if the defendant obtained possession from the owner lawfully, but thereafter, and before he drove it across the state line, decided to convert it to his own use. That question has troubled the courts and the enforcement agencies for many years; the amended information in this case was drawn to raise it squarely; and the United States Attorney and court appointed counsel for the defendant have briefed it fully and ably.

The information charges:

"On or about January 20, 1956, at Columbia, South Carolina, James Vernon Turley did lawfully obtain a certain 1955 Ford automobile from its owner, Charles T. Shaver, with permission of said owner to use the automobile briefly on that day to transport certain of their friends to the homes of the latter in Columbia, South Carolina, and to return with them, but after so obtaining the automobile and transporting said persons to their homes, and before returning with them or delivering back the automobile to its owner,

James Vernon Turley, without permission of the owner, and with intent in South Carolina to steal the 1955 Ford automobile, did convert the same to his own use and did unlawfully transport it in interstate commerce from Columbia, South Carolina, to Baltimore in the State and District of Maryland, knowing it to have been stolen, where he did on January 21, 1956, sell said 1955 Ford automobile without permission of the owner. 18 U.S.C. 2312."

Sec. 3 of the National Motor Vehicle Theft (Dyer) Act, as passed by Congress Oct. 29, 1919, 41 Stat. 324, 325, provided: "That whoever shall transport or cause to be transported in interstate or foreign commerce a motor vehicle, knowing the same to have been stolen, shall be punished * * *". In its present form, as amended in 1945, it provides: "Whoever transports in interstate or foreign commerce a motor vehicle or aircraft, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years, or both." 18 U.S.C.A. § 2312.

The problem is: did Congress intend the word "stolen" to mean "taken under circumstances which amount to common law larceny"; if not, what did Congress intend the word "stolen" to mean; if so, do the facts charged amount to common law larceny.

*1. Should the word "stolen" be given a uniform meaning throughout the country?*

■ Two circuits have answered this question "yes", and have held that criminal liability under the Dyer Act should not depend upon the meaning given to the word "stolen" by the law of the state where possession of the automobile was obtained or the interstate transportation began. Hite v. United States, 10 Cir., 168 F.2d 973; Ackerson v. United States, 8 Cir., 185 F.2d 485. In the absence of a plain indication to the contrary, the meaning of a statute should not depend on state law. Uniformity is the primary consideration. Jerome v. United States,

318 U.S. 101, 63 S.Ct. 483, 87 L.Ed. 640; United States v. Handler, 2 Cir., 142 F. 2d 351, 354. When Congress has desired to incorporate state laws into federal statutes, it has done so specifically: e. g. 18 U.S.C.A. §§ 43, 1073, 1262, 5001; 15 U.S.C.A. § 715b.

In most of the opinions which have considered the Dyer Act, it seems to have been assumed that the word "stolen" should have a uniform meaning throughout the country, and should not depend upon the law of the state where the automobile was taken from the owner. In Hite v. United States and Ackerson v. United States, supra, the point was expressly decided.

*2. Did Congress intend the word "stolen" to mean "taken under circumstances which amount to common law larceny"?*

■ The primary purpose of the Dyer Act was to combat effectively the rising traffic in stolen cars by organized groups of thieves and dealers operating across state lines; this traffic usually involves common law larceny. In the House debate, Mr. Dyer said: "It provides for only two things. Section 3 provides for the punishment of a thief stealing a car and transporting it from one State to another. Section 4 provides for the receipt of the stolen car by thieves in another State for the purpose of selling and disposing of it." 58 Cong.Rec., Part 6, p. 5472. In the Senate debate, discussing a phrase, subsequently deleted, from sec. 4, "that whoever shall, *with the intent to deprive the owner of the possession thereof*, receive, etc.", Senator Nelson noted that the italicized phrase was surplusage, because one of the elements of the offense of stealing was deprivation of the owner of the thing stolen without his consent, and that this was a "textbook" definition. 58 Cong.Rec., Part 7, p. 6434. Senator Nelson evidently was referring to common law larceny, and not to the hodgepodge of State statutes dealing with the subject.

The Tenth, Eighth and Fifth Circuits have held that the word "stolen", as used in the Dyer Act, requires proof of common law larceny. Hite v. United States, 10 Cir., 168 F.2d 973; Ackerson v. United States, 8 Cir., 185 F.2d 485; Murphy v. United States, 5 Cir., 206 F.2d 571. In Ex parte Atkinson, D.C.E.D.S.C., 84 F.Supp. 300, in our circuit, Judge Wyche came to the same conclusion. See also United States v. Bucur, 7 Cir., 194 F.2d 297; United States v. Kratz, D.C.Neb., 97 F.Supp. 999, 1001; United States v. O'Carter, D.C.S.D.Iowa, 91 F.Supp. 544.

The only Circuit which has expressly held the contrary is the Sixth Circuit, where a district court decision, United States v. Adcock, D.C., 49 F.Supp. 351, has been followed by later cases in the Court of Appeals; Davilman v. United States, 6 Cir., 180 F.2d 284; Collier v. United States, 6 Cir., 190 F.2d 473; Wilson v. United States, 6 Cir., 214 F.2d 313; Bruce v. United States, 10 Cir., 218 F.2d 819.

In United States v. Sicurella, 2 Cir., 187 F.2d 533, 534, the court said:

"Defendants say that a conviction under the Dyer Act cannot stand unless there is evidence sufficient to prove larceny under the narrowest definition of that crime at common law. Such a contention would not help the defendants even if it were sound—which we do not intend to intimate—for a narrow common law definition is not required under the Dyer Act. See Davilman v. United States, 6 Cir., 180 F.2d 284; Stewart v. United States, 8 Cir., 151 F.2d 386; Loney v. United States, 10 Cir., 151 F.2d 1. Moreover, it was always larceny when there was an intent at the time a bailee acquired possession of the property of another to convert it to his own use and the bailee thereafter did convert it and the owner had given over the property with no intention that title should pass. See e. g., Hite v. United States, 10 Cir., 168 F.2d 973; United States v. Patton, 3 Cir., 120 F.2d 73; Reg. v. Ashwell, 16 Q.B.D. 190."

It should be noted that Davilman is the only case cited by the Second Circuit which holds that the Dyer Act applies to anything except common law larceny. The other cases cited deal with the question whether the facts alleged or proved amounted to larceny, which will be discussed below.

Aside from the Dyer Act, the Federal courts have often held that when a Federal criminal statute uses a term known to the common law and does not define that term, the courts will apply the common law meaning of the term unless the context indicates a contrary intent on the part of Congress.[1]

■ The constitutional objection to vagueness and uncertainty in criminal statutes is avoided by the rule that an undefined term having a meaning at common law assumes that meaning when used in a statute. United States v. Miller, D.C.W.D.Ky., 17 F.Supp. 65. See also Crawford, The Construction of Statutes, sec. 228: "If a statute is ambiguous or its meaning uncertain, it should be construed in connection with the common law in force when the statute was enacted * * * And there is a presumption that the lawmakers did not in-

---

1. United States v. Brandenburg, 3 Cir., 144 F.2d 656, 154 A.L.R. 1160 (burglary); United States v. Patton, 3 Cir., 120 F.2d 73 (larceny); Harrison v. United States, 163 U.S. 140, 16 S.Ct. 961, 41 L.Ed. 104 (robbery); United States v. Carll, 105 U.S. 611, 26 L.Ed. 1135 (forgery); United States v. Smith, 5 Wheat. 153, 5 L.Ed. 57 (piracy); United States v. Palmer, 3 Wheat. 610, 4 L.Ed. 471 (robbery); United States v. Outerbridge, Fed.Cas.No.15,978 (murder); U. S. v. Armstrong, 2 Curt. 446, 451, Fed.Cas. No.14,467 (manslaughter); In re Greene, C.C.S.D.Ohio, 52 F. 104 (restraint of trade); United States v. Cardish, D.C.E.D.Wis., 143 F. 640 (arson); U. S. v. Coppersmith, C.C.W.D.Tenn., 4 F. 198 (felony); U. S. v. Clark, D.C.Alaska, 46 F. 633 (murder); United States v. Altmeyer, D.C.W.D.Pa., 113 F.Supp. 854 (extortion).

tend to abrogate or alter it in any manner * * *".

Black's Law Dictionary says "steal", besides being commonly used in indictments for larceny, may denote the criminal taking of personal property either by larceny, embezzlement or false pretenses, and may include the unlawful appropriation of things which are not technically the subject of larceny. This is probably the common, everyday meaning of the word, but the holding of the Tenth, Eighth and Fifth Circuits that the term "steal", when used in a criminal statute and undefined by the text, refers to common law larceny, is supported by the weight of authority in State courts.[2]

When Congress has intended to cover misappropriations other than common law larceny, it has used language appropriate to indicate such intention.[3] In United States v. Morgan, D.C.Ark., 98 F.Supp. 558, the court, construing 18 U.S.C.A. § 659, noted that the breadth of the language used in that statute made inapplicable the strict construction of the Dyer Act given in Hite v. United States, 10 Cir., 168 F.2d 973. Cf. United States v. Stone, C.C., 8 F. 232; United States v. Jolly, D.C., 37 F. 108; Crabb v. Zerbst, 5 Cir., 99 F.2d 562; United States v. Handler, 2 Cir., 142 F.2d 351; Morisette v. United States, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288.

Some states have passed statutes broadening the definition of larceny and wiping out the distinctions between the old common law crimes. But there has been no uniformity in such statutes, and the offense of common law larceny still exists in many of those states.[4]

2. See, for example, State v. Frost, Mo. Sup., 289 S.W. 895; Hughes v. Territory, 8 Okl. 28, 56 P. 708; Cohoe v. State, 79 Neb. 811, 113 N.W. 532; Satterfield v. Commonwealth, 105 Va. 867, 52 S.E. 979; State v. Richmond, 228 Mo. 362, 128 S.W. 744; Gardener v. State, 55 N.J.L. 17, 26 A. 30; State v. Fair, 35 Wash. 127, 76 P. 731.

3. 18 U.S.C.A. § 641: "embezzles, steals, purloins, or knowingly converts * *" (public money, property or records); 18 U.S.C.A. § 642: "secretes within, or embezzles, or takes and carries away * *" (tools and materials of U.S. for counterfeiting purposes); 18 U.S.C.A. § 655: "steals, or unlawfully takes, or unlawfully conceals * * *" (theft by bank examiner); 18 U.S.C.A. § 656: "embezzles, abstracts, purloins, or willfully misapplies * * *" (theft by bank employee); 18 U.S.C.A. § 657: "embezzles, abstracts, purloins or willfully misapplies * * *" (theft by employee of credit, etc., company); 18 U.S.C.A. § 658: "conceals, removes, disposes of, or converts * * *" (employee of farm credit agency); 18 U.S.C.A. § 659: "embezzles, steals, or unlawfully takes, carries away, or conceals, or by fraud or deception obtains * * *" (baggage moving in commerce); 18 U.S.C.A. § 660: "embezzles, steals, abstracts, or willfully misapplies * * *" (funds of carrier); 18 U.S.C.A. § 663: "embezzling, stealing, or purloining such gift, or converting the same * * *" (money solicited for United States); 18 U.S.C.A.

§ 1704: "steals, purloins, embezzles, or obtains by false pretense * * *" (keys or locks—mail containers); 18 U.S.C.A. § 1707: "steals, purloins, or embezzles * * * or appropriates * * * to * * * any other than its proper use * * *" (post office property); 18 U.S.C.A. § 1708: "steals, takes, or abstracts, or by fraud or deception obtains * * *" (mail matter); 18 U.S.C.A. § 2314: "knowing the same to have been stolen, converted or taken by fraud * * *" (transportation of articles used in counterfeiting); 18 U.S.C.A. § 2315: "knowing the same to have been stolen, unlawfully converted, or taken .* * *" (sale or receipt of such articles).

4. In South Carolina, where the transactions in the case at bar took place, the court has held that "when the possession of property has been legally obtained, and thereafter fraudulently converted to his own use by the person having the possession, an indictment at common law will not lie, because larceny, at common law, is an offense against the possession of property." State v. Posey, 1911, 88 S.C. 313, 70 S.E. 612, 614. Like some other states South Carolina has passed a statute, S.C.Code Ann. 1952, § 16–365, which provides: "Breach of trust with fraudulent intent. Any person committing a breach of trust with a fraudulent intention shall be held guilty of larceny and so shall any person who shall hire or counsel any other person to commit a breach of trust with a fraudulent intention."

■ I conclude that in the Dyer Act and in the current amendment thereto Congress used the term "stolen" to imply a taking which amounts to common law larceny, not "under the narrowest definition of that crime at common law", but as "common law larceny" has been understood in the United States.

*3. Do the facts alleged amount to common law larceny?*

■ United States v. Patton, 3 Cir., 120 F.2d 73, discusses some general principles:

> "'Larceny, at common law, is the taking and removing, by trespass, of personal property which the trespasser knows to belong either generally or specially to another, with the felonious intent to deprive him of his ownership therein.' Clark's Cr. Law (3rd Ed.) 305. One of the essential elements of the crime is that the taking is by trespass, that is, without the consent of the owner. So in Reg. v. Ashwell, 16 Q.B.D. 190, A. L. Smith, J., said (p. 195): 'To constitute the crime of larceny at common law, in my judgment there must be a taking and carrying away of a chattel against the will of the owner, and at the time of such taking there must exist a felonious intent in the mind of the taker. If one or both of the above elements be absent there cannot be larceny at common law. The taking must be under such circumstances as would sustain an action of trespass. If there be a bailment or delivery of the chattel by the owner, inasmuch as, among other reasons, trespass will not lie, it is not larceny at common law.'" 120 F.2d at page 75.

In Moore v. United States, 160 U.S. 268, 16 S.Ct. 294, 295, 40 L.Ed. 422, the Supreme Court said:

> "Embezzlement is the fraudulent appropriation of property by a person to whom such property has been intrusted, or into whose hands it has lawfully come. It differs from larceny in the fact that the original taking of the property was lawful, or with the consent of the owner, while in larceny the felonious intent must have existed at the time of the taking."

The common law with respect to larceny by servants, agents and bailees went through a long period of development. See discussions in Commonwealth v. Ryan, 1892, 155 Mass. 523, 30 N.E. 364, 15 L.R.A. 317; Commonwealth v. James, 1823, 1 Pick. 375, 18 Mass. 375; Commonwealth v. Eichelberger, 1888, 119 Pa. 254, 13 A. 422; United States v. Patton, supra. But it finally became crystallized to such an extent that, in 1885, the Supreme Court of Illinois could say, with some assurance:

> "From this review of the subject it will be perceived there are three classes of cases in which convictions for larceny at common law are sustained where the apparent possession is in the accused: First, where the accused has the mere custody of the property, as contradistinguished from possession, as in the case of servants and the like; second, where he obtains the custody and apparent possession by means of fraud, or with a present purpose to steal the property; and third, where one having acquired possession by a valid contract of bailment, which is subsequently terminated by some tortious act of the bailee, or otherwise, whereby the possession reverts to the owner, leaving the custody, merely, in the former, and the bailee, while being thus a mere custodian, feloniously converts the property to his own use." Johnson v. People, 113 Ill. 99.

*(a) Cases where the accused has the mere custody of the property as distinguished from possession.*

---

Under the South Carolina statute therefore, Turley would have been guilty of larceny, but he would not have been guilty of common law larceny, as that term has been understood in South Carolina.

The distinction between custody and possession was discussed in Crocheron v. State, 1888, 86 Ala. 64, 5 So. 649, where a hired hand was held to have committed larceny when he failed to return a mule given him to till the fields:

"The prosecutor had parted only with the custody of the mule, as distinguished from the possession, which was still in him as owner, although the defendant had custody of the animal as mere employee or servant. It has often been decided, and is now settled law, that goods in the bare charge or custody of a servant are legally in the possession of the master, and the servant may be guilty of trespass and larceny by the fraudulent conversion of such goods to his own use. Oxford v. State, 33 Ala. 416; 2 Bish.Crim.Law (7th Ed.) § 824.

"It is accordingly said by Lord Hale that it would be larceny if a butler should appropriate his master's plate, of which he had charge; or the shepherd, his master's sheep in his custody; and so of an apprentice who feloniously embezzles his master's goods. 1 Hale, P.C. 506; Ros.Crim.Ev. (7th Ed.) 639. In all such cases, the custody of the servant is distinguishable from that of a bailee or other person who has a special property in the goods, by reason of being under a special contract with respect to them. A mere servant or employe has no such special property. 3 Greenl.Ev. (14th Ed.) § 162. Where, however, a bailee, having such special property on goods, converts them to his own use, no conviction of larceny can be had without proving a fraudulent or felonious intention on his part at the time he received the goods in bailment. 2 Whart.Crim.Law (9th Ed.), § 963; Watson v. State, 70 Ala. 13."

In Robinson v. State, 1860, 1 Cold. 120, 41 Tenn. 120, 121, the court said:

"In 4 Black.Com., Chap. 17, p. 230, texts note, the law on this point is laid down, and has, perhaps, never been departed from. He says there must be a *taking*, which implies the consent of the owner to be wanting. Therefore, no delivery of the owner, to the offender, upon trust, can ground a larceny. As if A lends B a horse, and he rides away with him —or, if I send goods by a carrier, and he carries them away—these are no larcenies. *But if the carrier opens a bale, or package of goods, or pierces a vessel of wine, and takes away a part thereof, these are larcenies, 'for here the animus furandi is manifest.'* "

The exception in cases where the bailee "breaks the bulk" will be discussed under (c) below.

In Fulton v. State, 1852, 13 Ark. 168, the defendant borrowed a horse to ride to a neighbor's house. He rode there, but instead of returning the horse, went on the next day to Little Rock and sold the horse. The court said there was no larceny unless felonious intent existed at the time of the borrowing. In accord with the Fulton case are: State v. Stone, 68 Mo. 101 (horse, mare, and wagon borrowed to haul oats to Mt. Vernon and return; after carting oats to Mt. Vernon, defendant kept on going); State v. Hayes, 1892, 111 N.C. 727, 16 S.E. 410 (ox borrowed to haul lumber); State v. Wood, 1877, 46 Iowa 116 (guitar loaned to defendant to repair it); Grimes v. State, 1879, 68 Ind. 193 (shotgun loaned to be used on certain trip); Abrams v. State, 1904, 121 Ga. 170, 48 S.E. 965 (mule loaned to make a trip).

The defendant in State v. Fann, 1871, 65 N.C. 317, was a field hand. His employer, while drunk, gave the defendant a roll of money to take care of for him. The court said that as a field hand the defendant had custody of such property as he used in the course of husbandry, but that he was given possession of the money as a friend and bailee, outside the scope of his duties. See also Case v. State, 1885, 26 Ala. 17; Smith v. Commonwealth, 1894–1895, 96 Ky. 85, 27 S.W. 852.

Many cases hold that the determining factor in deciding whether possession has been given up is not the scope of the bailee's right to use, or discretion in dealing with, the property, but the presence or absence of a master-servant relationship.[5] Other cases and text writers, however, state the rule differently; e. g. Wharton's Criminal Law, Vol. II, p. 1508:

"If a servant or other agent who has merely the care and oversight of the goods of his master—as the butler of plate, a messenger or runner of material or goods, a hostler of horse, the shepherd of sheep, and the like—convert such goods to his own use, without his master's consent, this is a larceny at common law; because the goods at the time they are taken, are deemed in law to be in possession of the master—the possession of the servant in such a case being the possession of the master. The same rule is applicable to all cases in which a person to whom goods are given for a particular purpose (as the agent of another) has bare possession."

Cf. Bishop's Criminal Law, Vol. II, Sec. 835; Miller on Criminal Law, sec. 111f. Wharton's view is supported by some modern criminal cases and some insurance cases; e. g. Komito v. State, 1914, 90 Ohio St. 352, 107 N.E. 762; Gibson v. St. Paul Fire, etc. Co., 117 W.Va. 156, 184 S.E. 562; Jacobson v. Aetna Casualty & Surety Co., 1951, 233 Minn. 385, 46 N.W.2d 868.

In Gibson v. St. Paul Fire, etc. Co., supra [117 W.Va. 156, 184 S.E. 563], an action on a theft policy which excluded coverage if the automobile was voluntarily placed by the owner in the possession of another, the court said:

" * * * temporary care of property does not rise to the dignity of 'possession' within the ordinarily accepted legal meaning of that term. Custody of things means to have them in charge—safekeeping. It implies temporary physical control merely, and does not connote domination, or supremacy of authority, as does possession in its full significance. Possession implies custody coupled with a right or interest of proprietorship. Possession is inclusive of custody, but custody is not tantamount to possession."

In Jacobson v. Aetna, etc. Co., supra [233 Minn. 385, 46 N.W.2d 869], the insured, an automobile dealer, let a prospective buyer use a new car over the week end, with the understanding that the deal would be closed on Monday; the prospective buyer, however, did not return the car. The court laid down the following general rules:

1. "*Constructive* possession of personal property by its owner exists where the owner has *intentionally* given the *actual* possession— namely, the direct physical control —of the property to another for the purpose of having him do some act *for the owner* to or with the property; that is to say, constructive possession exists wholly in contemplation of law without possession in fact."

2. "Where the owner retains constructive possession, the party to whom bare physical control of the property has been entrusted for the owner's purpose does not have possession but only custody."

The court found that the owner intended the buyer to exercise exclusive dominion over the car, temporarily or otherwise, solely or primarily for buyer's direct use or purpose, as distinguished from a use or purpose for the direct benefit of the owner.

5. An exception to this rule is recognized where property is handed over in the owner's presence to be examined and returned, or, in the case of money, to make change; in those situations the owner does not give up possession. Commonwealth v. O'Malley, 1867, 97 Mass. 584; Ellis v. People, 21 How.Pr.,N.Y., 356; Hilderbrand v. People, 3 Thomp. & C., N.Y., 82, 1 Hun 19.

The case at bar is a criminal case, and a stricter rule of construction must be applied in favor of the defendant than is applied in construing insurance policies which are written by the defendant companies.

The information alleges that Turley obtained the automobile from its owner "to transport certain of their friends to their homes in Columbia, South Carolina, and to return with them". Turley was not a servant of the owner. The use of the automobile was for their joint benefit. Under the weight of authority, Turley had possession of the automobile and not a mere custody.

*(b) Cases where custody or possession was obtained by fraud.*

Most of the cases under the Dyer Act have dealt with situations where possession was obtained from the owner by fraud; Hite v. United States, 10 Cir., 168 F.2d 973; Murphy v. United States, 5 Cir., 206 F.2d 571; Ackerson v. United States, 8 Cir., 185 F.2d 485; Ex parte Atkinson, D.C.E.D.S.C., 84 F.Supp. 300; United States v. O'Carter, D.C.S.D.Iowa, 91 F.Supp. 544. These cases, which hold that the Dyer Act requires proof of common law larceny, also hold that the controlling question on that issue is whether the owner intended to give title to the automobile as well as possession. All of them recognize that where possession is obtained by fraud, or through a fraudulent trick or device, the owner retains constructive possession unless he intends to and does part with his title to the property, as well as the possession. See also United States v. Sicurella, 2 Cir., 187 F.2d 533, 534; United States v. Patton, 3 Cir., 120 F.2d 73, 76; Loney v. United States, 10 Cir., 151 F.2d 1, 4; Clark's Criminal Law, p. 322.

No case has been cited or found in which facts similar to those charged in the case at bar have been held not to come within the Dyer Act. On the other hand, Wilson v. United States, 6 Cir., 214 F.2d 313, is the only case cited or found in which the Dyer Act was held to apply where possession was obtained

in a lawful manner but the defendant converted the vehicle to his own use before transporting it in interstate commerce. And the court in that case, the Sixth Circuit, is the court which has held that proof of common law larceny is not necessary for conviction under the Dyer Act.

The Dyer Act cases are in line with the general law. In Commonwealth v. James, 1 Pick. 375, 18 Mass. 375, decided in 1823, the court discussed at length the leading English case, reported in 13 Ed. 4, fol. 9, and said:

"It will be perceived that here may be found the distinctions which are recognized in the textbooks upon this subject. Thus if the party obtain the delivery of the goods originally without an intent to steal, a subsequent conversion of them to his own use while the contract subsisted would not be felony; but if the original intent was to steal, and the means used to obtain the delivery were merely colourable, a taking under such circumstances would be felony." 18 Mass. 383, 384.

Tredwell v. United States, 4 Cir., 266 F. 350, 352, states the rule as follows:

"Where one comes lawfully into the possession of property, and afterwards and while it is in his possession forms and carries out the purpose of appropriating it to his own use, the crime thus committed is the crime of embezzlement; but if, at the time of getting possession lawfully, the one to whom property is intrusted has the intention of appropriating it to his own use, the crime thus committed is the crime of larceny."

The information in the case at bar does not charge that possession was obtained by fraud, or that defendant had any felonious intent at the time he obtained the car.

*(c) Cases where the bailment is terminated by some tortious act of the bailee.*

■ The general rule, as set out in Bishop's Criminal Law, Vol. II, sec. 833–835, is that a bailee cannot be guilty of larceny of goods committed to him if he takes them while the relation exists, because he has possession, rather than custody of the goods. But when the relation has ended, as for instance, when the goods conveyed by a carrier have reached their destination, or he has broken open a package in violation of his trust, there may be larceny.

3 Coke's Institutes 107, states:

"If a bale or pack of merchandise be delivered to one to carry to a certain place, and he goeth away with the whole pack, this is no felony; but if he open the pack and take anything out *animo furandi*, this is larceny. Likewise, if the carrier carry it to the place appointed, and after take the whole pack *animo furandi*, this is larceny also, for the delivery had taken its effect, and the privity of the bailment is determined; and so it is of a tun of wine, or the like, mutatis mutandis."[6]

In Tredwell v. United States, 4 Cir., 266 F. 350, the defendant had been employed as a stevedore to unload from vessels nitrate owned by the government, and to load it onto cars for further shipment; after it had been so loaded the defendant caused certain of the cars to be billed to private consumers, to whom he sold the contents. After quoting from Moore v. United States, 160 U.S. 268, 16 S.Ct. 294, supra, Judge Knapp, speaking for the Fourth Circuit said:

"Granted that defendant had lawful possession of the nitrate for the purposes of his employment, we think it clear that such possession ceased when the loading of the cars was completed, and that the property then passed into the possession of the railroad company. When he thereupon caused it to be billed to his own customers, instead of the munition plants, his diversion of the property was in substance a felonious taking of it from the railroad company, and this brought his act within the accepted definition of larceny. * * *"

■ It is larceny when the bailee commits "a tortious act" with respect to the bailment, Johnson v. People, 113 Ill. 99, such as breaking bulk; but the "tortious act" does not mean the act of misappropriating the thing bailed itself, else all bailees who misappropriate goods would be guilty of larceny, and the courts have not so held.

In Rex v. Charlewood, cited in East's Cr.L. 689, reported in 1 Leach, Case 189, where the defendant hired a horse for the purpose of going to Barnet, but thereafter converted the horse to his own use, the court charged the jury, inter alia: "There is, however, another point for your consideration; for although he really went to Barnet, yet he was obliged by the contract to deliver the gelding to the owner upon his return to London; and therefore, if you think that he performed the journey, and returned to London, and instead of delivering the gelding to the owner converted it, after such return, to his own use, he is thereby guilty of felony; for the end and purpose of hiring the horse would then be over." 1 Leach 410–411.

In the later case of Rex v. Banks, Russ. & Ry. 441, decided in 1821, defendant

---

6. To the same effect is Blackstone, Book 4, p. *229; Regina v. William Thristle, 2 Car. & K. 842 (1848); Rex v. Banks, Russ. & Ry. 441 (1821); Rex v. Smith, 1 Moody's Crown Cases 473 (1836); Rex v. Savage, 5 Car. & P. 143 (1831); Rex v. Madox, Russ. & Ry. 92 (1805); Rex v. Fletcher, et al., 4 Car. & P. 545 (1831); Rex v. Pratley, 5 Car. & P. 533 (1833); Rex v. Brazier, the younger, Russ. & Ry. 337 (1817); Rex v. Channel, 2 Strange 793 (1728). The same rule has been applied in a number of American cases: e. g. Wright v. Lindsay, 20 Ala. 428; Robinson v. State, 41 Tenn. 120. Cf. Com. v. Brown, 4 Mass. 580; Com. v. James, 1 Pick. 375, 18 Mass. 375; Com. v. Eichelberger, 119 Pa. 254, 13 A. 422.

borrowed a horse under pretense of carrying a child to a neighboring surgeon. The next day he took the horse in a different direction and sold it. The court held that "if the prisoner had not a felonious intention when he originally took the horse, his subsequent withholding and disposing of it did not constitute a new felonious taking, or make him guilty of felony; consequently the conviction could not be supported." See also Regina v. Jenkins, 9 Car. & P. 38; Fulton v. State, 13 Ark. 168, and the other cases cited above under point (a).

The information in the case at bar indicates that the purpose of the bailment had not been completed. The defendant had not brought the friends back to the party before he converted the automobile to his own use. The case, therefore, comes within the general rule that conversion by a bailee in the course of his bailment is not common law larceny.

Since Congress intended the word "stolen" to imply common law larceny, and since the acts charged do not amount to common law larceny, the motion to dismiss the information must be granted.