## ACKERSON v. UNITED STATES.

### No. 14161.

United States Court of Appeals
Eighth Circuit.

Dec. 15, 1950.

J. M. Willemin, Jonesboro, Ark., for appellant.

James T. Gooch, U. S. Atty., G. D. Walker, and W. H. Gregory, Asst. U. S. Atty., all of Little Rock, Ark., for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and RIDDICK, Circuit Judges.

GARDNER, Chief. Judge.

This appeal is from a judgment of conviction on a charge that defendant "did knowingly, wilfully and unlawfully transport and cause to be transported and aid and assist in the transportation of a motor vehicle in interstate commerce * * * then and there well knowing said motor vehicle to have been stolen," in violation of Section 408, Title 18 U.S.C.A., now Section 2312, Title 18, U.S.C.A. The pertinent part of the statute reads as follows: "* * * Whoever shall transport or cause to be transported in interstate or foreign commerce a motor vehicle, knowing the same to have been stolen, shall be punished by a fine of not more than $5,000, or by imprisonment of not more than five years, or both."

The indictment charged defendant with the transportation of a 1940 Chevrolet sedan motor car from Paragould, Greene County, Arkansas, to the City of Memphis, in the State of Tennessee, well knowing said car to have been stolen, the car being the property of one C. M. Faulkner, of Paragould, Arkansas.

Shortly before the transaction here involved, C. M. Faulkner purchased, in Los Angeles, California, the Chevrolet automobile described in the indictment for the sum of $1,000. On the 28th of July, 1948, he was approached by defendant regarding the sale of the car. After some negotiations with reference to the price of the car the owner agreed to sell to defendant for $1200. Defendant agreed to purchase the car for this sum but stated that he did not have that much money in cash but that if Mr. Faulkner would deliver the car to Woodlawn, Illinois, defendant would pay him $1200 in cash, or in the alternative he would give him a check for the amount of

the purchase price. Defendant assured Faulkner that, "The money is there, the check is good." Faulkner testified that, "We agreed that he would give me the check and I wouldn't give him any papers, any title, anything, and I told him my title hadn't yet come in from California."

To this defendant replied that all he wanted was a bill of sale. Faulkner then said that he could give a bill of sale and attach it to the check but that he could not attach title, but that as soon as it arrived from California he would mail the title. The check was later forwarded with bill of sale attached but was not paid because defendant had no funds in the bank on which the check was drawn. Mr. Faulkner then went to DuQuoin, Illinois, where the bank on which the check was drawn was located, and where the defendant resided. He was, however, unable to find the defendant but later located the car in the possession of a man at Memphis, Tennessee. On cross-examination defendant testified that he sold the automobile at an auction sale in Mississippi.

Faulkner had never received any money on the check. He testified that at the time of the agreed sale of the car he delivered possession to the defendant and gave him the keys to the car. He was then interrogated on cross-examination and answered as follows:

"Q. You never expected to see the car again when he drove it off? A. Well, I didn't think nothing about it, whether I would ever see it again or not.

"Q. Answer that question. The day he drove it off you never expected to see the car again, did you? A. I wouldn't say I didn't never expect to see it.

"Q. Did you or did you not? A. As far as the sale was concerned, I didn't ever expect to see it again.

"Q. You thought the sale was made, completed, and done with? A. Yes.

"Q. You never expected to have the car in your possession again? A. Well, I don't hardly know how to answer that "expecting.' I didn't get my money.

"Q. I am talking about what happened on the 28th of July, not what happened later on. But that day the sale was final and complete, as far as you were concerned? A. As far as giving a check for anything, yes.

"Q. And you never expected to see the car or have it in your possession again? A. I wouldn't exactly say that because I didn't know yet whether the check was any good or not.

"Q. Did you ever expect to exercise any further control over the car while it was in Mr. Ackerson's possession? A. I did after I found out the check wasn't any good.

"Q. We are talking about what happened on the 28th of July, Mr. Faulkner, and that is what this prosecution is based on, not what happened later. On the 28th of July the sale was final and complete? A. Yes. We made the sale that day.

"Q. And you never expected to control the movements of that car again? A. Well, I wouldn't say that I did.

"Q. You did not expect to then, did you? A. I didn't give it any thought one way or the other.

"Q. Mr. Ackerson as of the day he drove the automobile away was under no obligation to you in handling the car, was he? A. Well, he didn't have any papers with the car, as far as the ownership and all. He had nothing to show it was his.

"Q. Didn't you sell him the car? A. Yes.

"Q. Didn't you know he was going to take it? A. Yes, I figured he was going to take the car.

"Q. Didn't he tell you he was going to Illinois in the car? A. He didn't say exactly that was where he was going at that time.

"Q. Didn't he tell you he was going to sell the car? A. No. He didn't tell me he was going to sell it."

The witness also testified:

"Q. * * * If he had told you he was going to sell that car before he got back home, would you have objected? A. Yes, I would have.

"Q. Why? A. Because it wasn't lawfully his car.

"Q. But you sold it to him, didn't you? A. Considering his check was good, yes.

"Q. Did you doubt his check? A. No, I didn't at the time."

The check was drawn on a bank in which defendant had no funds and never had had any funds. Neither did he at any time after issuing the check place any money in the bank for the purpose of paying the check when it was presented. When he sold the car he gave his own address as Dyersburg, Tennessee, which was not his correct address and never had been. There was evidence that defendant placed $1200 in the hands of the sheriff of the county in which he lived in Illinois, with directions to the sheriff to make payment if and when Faulkner might make demand. There was no claim that Faulkner had any notice of this alleged deposit with the sheriff, and defendant must be presumed to have known that the check would in due course be presented to the bank on which it was drawn and not to the sheriff or anyone else, and it was in fact so presented. There was other testimony but in our view of the issues presented it is not material.

At the close of the government's case and again at the close of the evidence defendant moved for a judgment of acquittal which was denied and the case was submitted to the jury on instructions to which defendant saved certain exceptions. The defendant in seeking reversal contends that the court erred (1) in denying his motion for judgment of acquittal made at the close of all the testimony and (2) in refusing to give certain instructions requested by defendant and in the giving of certain instructions.

It is argued by defendant that the evidence was insufficient to prove the offense charged because the proof failed to show that the property transported was stolen property. The gist of the offense was the alleged transportation in interstate commerce. The statute does not purport to punish for larceny but for the transportation in interstate commerce of stolen property. As the statute does not define larceny it must be assumed that Congress

had in mind larceny as defined by the common law. We are therefore not at liberty to resort to the special statute of the State of Arkansas which includes in the crime of larceny the offense of obtaining personal property by false pretenses. At common law larceny may be said to consist in "the felonious taking by trespass and carrying away by any person of the goods or things personal of another from any place, without the latter's consent, and with the felonious intent permanently to deprive the owner of his property and to convert it to the taker's own use." 32 Am.Juris., Sec. 2, p. 893.

It is the contention of the defendant that he secured possession of the automobile with the consent of the owner and that the owner not only parted with possession but with title and that while he may have obtained possession of the property by means of false pretenses, he did not commit larceny in obtaining it. The distinction between obtaining property by false pretenses and by means of larceny is sometimes difficult to define. If it was the intention of the owner not to part with his ownership of the property when relinquishing possession of it, then the offense is larceny. We have held in Stewart v. United States, 8 Cir., 151 F.2d 386, that where the defendant secured possession of the property by trick, fraud or artifice, the owner still meaning to retain title, the taking by such means with felonious intent amounts to larceny. If, however, the owner parts not only with the possession of the property but with the title as well, the offense is not larceny but the crime of obtaining goods by false pretenses. It is therefore of primary importance in the instant case to determine whether Faulkner, in parting with possession of the automobile, intended to part with his title as well. Hite v. United States, 10 Cir., 168 F.2d 973; Loney v. United States, 10 Cir., 151 F.2d 1; United States v. Patton, 3 Cir., 120 F.2d 73; Haley v. State, 49 Ark. 147, 4 S.W. 746; United States v. Mangus, D.C., 33 F.Supp. 596. If he did intend to part with the title then the car was not a stolen car. In Loney v. United States, supra, the court was confronted with a

somewhat similar situation and in the course of the opinion in that case it is said:

"Where a person intending to steal another's personal property obtains possession of it, although by or with the consent of the owner, by means of fraud or through a fraudulent trick or device, and feloniously converts it pursuant to such intent, the owner will be regarded as having retained constructive possession. Hence, in such cases the conversion constitutes a trespass.

"The foregoing rule is not applicable where the owner, although induced by fraud, intends to and does part voluntarily with his title to the property, as well as his possession thereof, not expecting the property to be returned to him or to be disposed of in accordance with his directions." [151 F.2d 4.]

 We think this is a correct statement of the applicable law. Viewing the evidence, as we must, in a light most favorable to the Government, we do not believe it was error in the court to deny the motion for acquittal. It was not such as to require the court to decide as a matter of law that the automobile was delivered to the defendant with intent on the part of its owner to part with title.

Defendant requested the court to instruct the jury as follows: "The jury is instructed that in order for you to find the defendant guilty as charged in the indictment, you must first find that the car involved herein was stolen. You are told that larceny is synonymous with the word 'steal'. Larceny or stealing is defined as 'the felonious taking or carrying away of the property of another, without the owner's consent and against his will, and with the intent of depriving the true owner of his property.' Therefore, if you find in this case that there was a sale of the car by Faulkner to Ackerson and that Faulkner voluntarily parted with possession of the automobile, not expecting it to be returned to him or disposed of in accordance with his directions, then your verdict should be for the defendant, or a verdict of not guilty. * * *".

This requested instruction was denied. The question, we think, is also raised by an exception to one of the court's instructions, designated in the record as instruction No. 5. This instruction reads in part as follows: "* * * the court instructs you that if you find from the evidence beyond a reasonable doubt the defendant bought or pretended to buy this car from the true owner and gave him a check therefor and instructed him how to present it for payment and that the defendant then knew or had cause to know, or intended that the check would not be paid upon presentation and at that time or at the time he transported this car in interstate commerce, he intended to convert the car to his own use or to deprive the true owner of its lawful possession, then you are told that in this case that would constitute larceny and the car would be a stolen car. In order for you to find that it was a stolen car and that it was obtained by larceny, you must find, beyond a reasonable doubt, that the giving of the check, the instructions as to its presentation for payment made by the defendant, with the knowledge or intent that it would not be paid when so presented, that is that his conduct in giving the check and instructions was a false and fraudulent trick or device to secure the possession of the car. If you do so find, that would make his taking of the car a wrongful taking, would constitute larceny. This is so even though it appeared to be a bona fide transaction on its face. * * *"

The defendant objected to this instruction for the reason that the defendant if guilty of any crime in giving the check was guilty of obtaining property by false pretenses, and the giving of the check in payment of the car did not constitute the crime of larceny by trick or device, the owner having voluntarily parted with title. The court manifestly assumed that the case was governed by what was said by us in Stewart v. United States, supra, but the facts in the two cases are quite different. In the Stewart case there was no evidence tending to show that the owner of the property intended at the time he parted with possession also to part with his title,

490

nor was there any claim that the defendant purchased the property.

■ In the instant case we do not think the defendant was entitled to a judgment of acquittal on his motion interposed because the evidence which we have set out in some detail, so far as it affects the issue, presented a jury question. That question, we think, was whether or not Faulkner delivered the car to the defendant with intent to part with title. If Faulkner intended voluntarily to part with his title, as well as his possession, not expecting the property to be returned to him or to be disposed of in accordance with his directions, then the car was not a stolen car even though Faulkner was induced to part with the title through the fraud and misrepresentation of the defendant. Such fraudulent acts, though manifestly criminal, constituted some other crime than that of common law larceny. 32 Am.Juris, Sec. 30, pp. 918-919.

The judgment appealed from is therefore reversed with directions to grant defendant a new trial.