Jerry Robert LOMAN, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 15687.

United States Court of Appeals
Eighth Circuit.

April 26, 1957.

Rehearing Denied May 27, 1957.

John A. Biersmith, Jr., Kansas City, Mo. (Henry H. Fox, Jr., Kansas City, Mo., on the brief), for appellant.

Paul R. Shy, Asst. U. S. Atty., Kansas City, Mo. (Edward L. Scheufler, U. S. Atty., Kansas City, Mo., on the brief), for appellee.

Before GARDNER, Chief Judge, JOHNSEN, Circuit Judge, and DONOVAN, District Judge.

GARDNER, Chief Judge.

This appeal is from a judgment of conviction on a charge that defendant "did wilfully, unlawfully, knowingly and feloniously transport and cause to be transported in interstate commerce from Overland Park, Kansas, to Kansas City, Missouri, money, United States currency, of the value of Five Thousand ($5,000.-00) Dollars, or more, knowing same to have been converted and taken by fraud, in violation of Section 2314, Title 18, United States Code." The indictment also charged that defendant "did wilfully, knowingly, unlawfully and feloniously transport in interstate commerce from Overland Park, Johnson County, Kansas, to Kansas City, Missouri, one Walter K. Waters, who had theretofore been unlawfully seized, confined, inveigled, decoyed, kidnaped, abducted, and carried away and held for ransom, reward, and otherwise, all in violation of Section 1201, Title 18, United States Code." As defendant was acquitted on the kidnaping charge the testimony bearing upon that issue is of relatively little importance to a consideration of the issues here involved.

While defendant was charged as a principal the proof showed that the principal actor was one Kenneth Warren Smith and the claim of the government as disclosed by the court's instructions was that the defendant became liable as a principal because he aided and

abetted Smith in the perpetration of the alleged crime.

The evidence showed that on January 18, 1956, one Kenneth Warren Smith appeared at the office of one Walter K. Waters in Overland Park, Kansas, misrepresented himself as a member of the Kansas City, Missouri, Police Department and falsely introduced defendant as a member of the staff of the Prosecuting Attorney of Jackson County, Missouri. Waters had previously been charged by certain persons, unnamed in the record but who falsely impersonated officers, with some homosexual crime and had apparently put up $5,000 in the nature of "hush money" or bail.

On the occasion here involved Smith told Waters that the $5,000 which Waters had previously furnished had been mishandled and that an additional $5,000 would be needed to prevent prosecution. Relying on this statement Waters went to his bank in Overland Park, Kansas, and in the company of defendant, but in the absence of Smith, obtained the money by redeeming some government bonds. Emerging from the bank, Waters placed the envelope containing the money beside him on the front seat of his automobile and drove the trio across the Missouri-Kansas state line into downtown Kansas City, Missouri. There, in front of the Jackson County court house, Smith who was sitting in the back seat of the car said, "Where is the money?", to which Waters answered, "Here it is" and "I picked it up, to the best of my memory, and he took it out of my hand." Waters picked up the envelope preparatory to posting the bond himself but Smith told Waters that he, Smith, would post the bond. Smith then entered the building, emerging a short time later with assurances that everything was taken care of and the parties then dispersed. The testimony will be further developed in the course of this opinion.

At the close of the government's testimony and again at the close of the case defendant moved for judgment of acquittal, specifically challenging the sufficiency of the evidence to sustain any of the essential elements constituting the crime charged in the transportation count of the indictment. The motions were denied and the case was submitted to the jury on instructions to which various exceptions were saved by the defendant. The jury returned a verdict of not guilty on the kidnaping count and of guilty on the count charging transportation of stolen money in interstate commerce, pursuant to which the court entered judgment and sentence of conviction. From the judgment and sentence so entered defendant seeks reversal on substantially the following grounds: 1. The evidence is insufficient to sustain the verdict in that it appears from the undisputed evidence (1) that the stealing, converting or taking by fraud occurred after the transportation of the $5,000 in interstate commerce, (2) that the victim rather than the defendant transported the $5,000 in interstate commerce and (3) that the defendant neither aided, abetted, counselled, induced, procured nor caused the transportation of the $5,000 in interstate commerce, and 2. that the court's instructions to the jury considered as a whole exceeded the allowable scope of judicial comment, amounted to advocacy of the government's case, directed, at least in part, the return of a verdict of guilty, invaded the province of the finders of fact and erred in not submitting the defendant's defenses to the indictment.

The statute under which defendant was prosecuted and convicted, Section 2314, Title 18 U.S.C., so far as here pertinent, reads as follows:

"Whoever transports in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud * * * (shall be guilty of the offense, etc.)" (Parentheses supplied).

The gist of the offense described by this statute is manifestly the transportation of the stolen or converted property in interstate commerce. The

statute does not purport to punish for larceny but for the transportation in interstate commerce of stolen property. To constitute the offense the property transported in interstate commerce must have been stolen property and it must have been of that character before it was transported in interstate commerce. It is therefore of the utmost importance to determine whether this property had been stolen or converted before it was transported in interstate commerce. Ackerson v. United States, 8 Cir., 185 F.2d 485, United States v. Mercer, D.C. N.D.Cal., 133 F.Supp. 288. The statute does not purport to define larceny and as said by us in Ackerson v. United States, supra [185 F.2d 488]:

"* * * it must be assumed that Congress had in mind larceny as defined by the common law. * * * At common law larceny may be said to consist in 'the felonious taking by trespass and carrying away by any person of the goods or things personal of another from any place, without the latter's consent, and with the felonious intent permanently to deprive the owner of his property and to convert it to the taker's own use.' 32 Am.Juris., Sec. 2, p. 893."

It is to be noted here that the victim, Waters, personally secured the money from the bank. It was turned over to him in an envelope. He took it into his car, placed it on the seat beside him and it was not touched by Smith nor defendant while it was in the state of Kansas, nor indeed, until the completion of the transportation at the Jackson County court house in Kansas City, Missouri. There the evidence showed without dispute that Mr. Waters still had control and dominion over it as he picked it up with the avowed intent of posting it as bond and it was then taken from his hands by Smith. The testimony in this regard was that produced by the government and is without dispute. We quote excerpts from this testimony taken from the original transcript as follows:

"Q. When you left the bank you carried the money? A. I carried the money. Mr. Loman went around to the other side of the car and got in and I got in on the driver's side and laid the package down between us.

*　*　*　*　*　*

"Q. What transpired when you parked near the Jackson County Courthouse? A. When we parked the car I expected I was to go in with Smith to make the bond. He told me, no, he didn't want me to, didn't want to embarrass me that way. He was going to make the bond for me, and Loman was sitting where he sat all the time, and I was sitting here, and Smith said, 'Where is the money?' And I said, 'Here it is', and I picked it up, to the best of my memory, and he took it out of my hand and I started to get out of the car to go with him and he said, no, I didn't need to go because he was going to take care of it and didn't want to embarrass me that way.

*　*　*　*　*　*

"Q. When you put the money on the seat, now you were going back, coming back to Missouri for the purpose of posting your own bond, were you not, Reverend? A. Yes, sir.

*　*　*　*　*　*

"Q. Now, up to the very time that you arrived in Kansas City, Missouri, I am just going to ask you this general question, and then going back up to the time you arrived in Kansas City, Missouri, in front of the courthouse, had anyone except yourself exercised any control or dominion over this money? A. No.

*　*　*　*　*　*

"Q. Now, you were the one up to the very moment that you arrived in Kansas City, Missouri, who was going to post this bond, isn't that true? A. Yes, sir.

"Q. And did you have any intention of turning the money over to Mr. Hughes, Mr. Loman or anybody else? A. I had no such intention, only as it was to be used for the posting of the bond.

\* \* \* \* \* \*

"Q. I say after you drove up there and parked your car on the street, you could have picked up the money and put it in your pocket and said, 'I am not satisfied with this', or anything you wanted to, couldn't you? A. I presume I could, sir."

We do not think this testimony sufficient to show that the money had been stolen from Waters until after it had been transported from Overland Park, Kansas to Kansas City, Missouri.

In 52 C.J.S. Larceny, § 6, p. 801, the author of the article on larceny, in referring to the sufficiency of the acts of securing dominion over the subject of alleged larceny, says:

"While the term 'taking' alone does not include all the elements of a criminal offense, in order to constitute a taking the prospective thief must have obtained at some particular moment the complete, independent, and absolute possession and control of the thing desired adverse to the rights of the owner therein. \* \* \* If the possession of the would-be taker is imperfect in any degree, or if his control of the thing desired is qualified by any circumstance, however slight, the taking is incomplete and the act is only an attempt."

See also United States v. Mercer, supra; Pearson v. United States, 6 Cir., 192 F.2d 681; Blakley v. State, 49 Okl. Cr. 10, 292 P. 878; United States v. LeFanti, D.C.N.J., 255 F. 210; Bishop on Criminal Law, 9th Ed., Vol. II, p. 607.

The contention is that Smith had constructive possession of the money before it left the State of Kansas because it is said the victim thought he was under arrest. The trouble with this contention is that it is not sustained by the facts and circumstances. While it will not, as a matter of law, affect the verdict in this case it is, we think, worthy of passing note that the jury found the defendant not guilty on the kidnaping charge. This was based on the very evidence which the government now contends proved that the $5,000 was in Smith's constructive possession. Waters testified to a former similar experience in which an unknown man representing himself as a policeman convinced Waters that he was charged with a very offensive sex crime. As in the instant case he was induced to put up $5,000 either as bail or "hush money" on the assurance that this would, in effect, quash the proceeding and preserve his good name. In the instant case it was represented that the first undertaking had been "mishandled" and that the matter was again threatening and would be revived unless Waters posted $5,000 presumably as bail. Apparently Waters was thoroughly convinced that this was the situation and he was anxious to correct the bungling of the procedure and preserve his good name. After being so convinced there is nothing to indicate that he did not cooperate in the alleged effort and he was apparently anxious to accomplish the alleged purpose of the enterprise. In furtherance of the project he went to the nearby schoolhouse where his wife was employed and secured a key to his safety deposit box. He secured the money as hereinbefore related and his purpose was personally to post it as bail and he accompanied Smith and the defendant with that purpose in view and with the money in his possession. No one touched this money except Waters until after it had been transported in interstate commerce. When they arrived at the Jackson County court house in Kansas City, Missouri, Smith, who was riding in the back seat, asked where the money was. Manifestly, he did not have it but Waters had it, picked it up and Smith took it from his hand and then for the first time Waters learned that Smith, not Waters, would post the money. In United States v. Mercer, supra, the facts in many respects

are like those in the instant case. There it was claimed that there was constructive possession of the money when it was transported. In the course of the opinion it is said [133 F.Supp. 292]:

"The failure of the government's proof under count four is that Mrs. Rebhan's money had not been taken from her by fraud until she turned it over to the defendants in Phœnix, after the interstate transportation of the money as charged in the indictment was completed. As this Court reads Section 2314, an offense is not committed under that section unless there is an interstate transportation of money which has been stolen, converted or taken by fraud. * * *

"The government does not seriously dispute the requirement that the money must have been taken by fraud at the time of its transportation interstate; the government does contend that the taking of Mrs. Rebhan's money by fraud occurred when she left Phœnix to go to San Francisco to get her money, or at least that the taking occurred when Mrs. Rebhan took possession of her money in San Francisco before taking it to Phœnix. In other words, the government contends that the defendants used Mrs. Rebhan as an agent to take her money from herself by fraud. Such a theory is not persuasive. Nor has the government cited this Court to any precedent for its contention. It is obvious that although Mrs. Rebhan acted under the influence of the defendants' fraudulent misrepresentations when she travelled to San Francisco to get her money, nevertheless she had complete dominion and control of her money until she handed it over to the defendants in Phœnix. At any time during her trip from San Francisco to Phœnix with the money, Mrs. Rebhan could have changed her mind about entrusting the defendants with her money. The government's evidence establishes that Mrs. Rebhan's money had not been taken by fraud until after the interstate transportation alleged in the indictment had concluded."

In the instant case we think there is no escape from the conclusion that the "money had not been taken by fraud until after the interstate transportation alleged in the indictment had concluded". It may well be that the defendant is subject to prosecution for the larceny of this money so taken from Waters in Jackson County, Missouri but, as we have already noted, the gist of the offense charged in this indictment is the transportation in interstate commerce.

Having reached the conclusion that the $5,000 in the instant case had not been stolen until after it had been transported in interstate commerce we pretermit consideration of the other contentions urged by defendant on this appeal. The judgment appealed from is therefore reversed with directions to enter judgment of acquittal on count two of the indictment.