Jesse GAY, Appellant,

v.

UNITED STATES of America, Appellee.

No. 18911.

United States Court of Appeals Eighth Circuit.

March 27, 1969.

BECKER, Chief District Judge.

Jesse Gay appeals from a conviction by a jury in the United States District Court for the Northern District of Iowa, of two counts charging violations of Section 2314, Title 18, U.S.C., and of Section 659, Title 18, U.S.C., respectively.

The first count charged that from on or about January 19, 1965, until on or about January 27, 1965, the appellant transported from Mason City, Iowa, to Houston, Texas, and Dallas, Texas, a load of meat consisting of 40,000 pounds of spareribs of an approximate value of $9,400.00, knowing "the said meat to have been stolen."

The second count charges that on or about January 19, 1965, appellant obtained the same meat "by fraud and deception from the platform and depot of Jacob E. Decker and Sons, Mason City, Iowa," ("Decker" hereinafter) when the same was "part of an interstate shipment of freight."

### The Evidence

The appellant Gay was an independent trucker (not licensed by the Interstate Commerce Commission, "ICC" hereinafter), who in January of 1965 was looking for a load to haul for hire. About the same time, meat packer Decker of Mason City, Iowa, offered 40,000 pounds of spareribs for sale. Personett, the complaining witness in this case, was a broker in Los Angeles. Personett learned of this offering and dealt with a wholesaler in San Francisco, who agreed to buy the meat. The wholesaler directed that the meat be delivered to Pacific Cold Storage in Los Angeles.

Personett and the wholesaler agreed that the meat was to leave Iowa January 19 and to be delivered in Los Angeles January 21 in 1965.

Sometime before January 15, 1965, appellant called Personett by long distance telephone from Minneapolis or St. Paul and asked Personett if he had a load to be hauled. Appellant and Personett then

---

William G. Line, Fremont, Neb., for appellant.

Asher E. Schroeder, U. S. Atty., Sioux City, Iowa, for appellee, Stephen M. Turner, previously United States Atty., on the brief.

Before VOGEL and LAY, Circuit Judges, and BECKER, Chief District Judge.

agreed that appellant would haul the meat from Decker in Mason City, Iowa, to Los Angeles, as scheduled, for $700.00 which was considerably less than the charges of a trucker licensed by the ICC.

In accordance with Personett's custom, to avoid difficulties with the ICC, it was agreed that Personett would pay $9,-400.00 for the meat and request that the invoice of sale show appellant as the purchaser. Both appellant and Personett intended that Personett be the owner of the meat, and that no moneys be loaned to appellant.

On January 18, 1965, Personett sent to the appellant a copy of a confirmation showing Decker as seller and appellant as buyer of the meat. Personett also sent to appellant a second confirmation showing appellant as seller and Personett as buyer of the meat, at a price of $700.00 in excess of the purchase price.

On January 19, 1965, appellant arrived at Decker's docks. The meat was loaded into his trailer which was then sealed shut. Appellant was then given an invoice showing him as buyer, and a bill of lading showing him as consignee of the meat, by Decker. Appellant took no part in the preparation of the documents issued to him, and did not suggest that they list him as buyer.

Thereafter, on or before January 20, 1965, appellant, with his loaded trailer needing repairs, was in Sioux City, Iowa, where he sought assistance from a broker in trucking service. Appellant asked the broker, with whom he had done business, for help in securing repairs to the landing gear or support for his trailer, and in leasing a trailer for use. On January 20, appellant left his trailer at a repair shop and leased another trailer from a truck line, for a period of two weeks. On the same day appellant's trailer was repaired and returned to appellant who was accompanied by an unidentified companion. The leased trailer was returned to the lessor in Sioux City twelve days later.

While in Sioux City appellant, representing himself to be the owner, sold 8 to 10 boxes of spareribs to Michael Econ, and 86 boxes of spareribs to Paul Braunger for $425.70, a price much below the market.

On January 28 and February 5, 1965, appellant was in Houston, Texas, where he sold two lots of spareribs to Fred Pauly. On February 1, 1965, in Dallas, Texas, he sold spareribs to Robert Perry for $4,413.20. The meat (all spareribs) was never delivered to Pacific Cold Storage in Los Angeles. Personett suffered a loss of $9,400.00 as a result.

After conviction, appellant was sentenced to six months' imprisonment on Count I and two years' probation on Count II. It was provided that the sentences would run concurrently.

## I

Appellant's first assignment of error is that the trial court erred in not sustaining his motion for judgment of acquittal on both counts "for the reason that there was no substantial evidence to support a conviction under either count." More specifically, it is appellant's contention that there was no evidence which could support a finding, necessary to the verdict, that appellant was not in fact the owner of the goods which he was charged with stealing. Appellant notes in this regard that the bill of lading, the *invoice,* and the *confirmations* of Personett to appellant showed appellant as owner of the meat; that, furthermore, there existed an account (on Personett's draft for the purchase price) showing that appellant owed the complaining witness the purchase price of the allegedly-stolen meats; and that, over against this evidence, there was only the testimony of the complaining witness Personett that he "assumed" that he retained ownership, even though he admitted the listing of appellant as buyer and owner in the invoice, the confirmations, and notations on the draft.

■■ Appellant's contention is without merit. Assuming, without so holding, that the documents issued by Per-

sonett and Decker vested appellant with legal title to the meat, such title would not require acquittal as a matter of law on either count. Title to goods transported is not a defense, if the title and possession were secured as a result of fraud or the goods stolen within the meaning of Section 2314. United States v. Leggett (C.A.6) 292 F.2d 423; cf. United States v. Turley, 352 U.S. 407, 77 S.Ct. 397, 1 L.Ed.2d 430, and cases cited in note 17 thereof, including Ackerson v. United States (C.A.8) 185 F.2d 485. Therefore, the existence of title in the appellant is no defense to Count I.

 Furthermore, the evidence strongly supports a finding that the meat was stolen, as defined in Instruction No. 12, following the doctrine of the *Turley* case, *supra*. See the discussion in Part III of this opinion. Finally, the documents issued by Personett before the delivery of the meat, and accepted by appellant, purported to invest appellant with title, and then to divest him of title by the contemporaneous confirmation of resale to Personett. There was substantial evidence that Personett was the beneficial owner of the meat and the documents were part of a subterfuge to avoid or evade ICC laws and regulations and to conceal the true ownership of the cargo.

United States v. Hamrick (C.A.4) 293 F.2d 468, relied on by appellant, obviously does not support his first assignment of error in respect to Count I. In that case there was a total absence of proof that the defendant knew the property was stolen.

## II

 Appellant's second assignment of error is based on the trial court's refusal to give defendant's requested instruction that the law forbids a broker using a false bill of lading or bill of sale in permitting any person to obtain transportation of property subject to ICC regulations for less than the applicable rate, and that the law prohibits the use of false documents in an effort to evade or defeat regulation prescribed by law for motor carriers or brokers. This was error, appellant contends, because the refused instruction pertained to a defense of appellant. Appellant argues that the instruction supports the defense that appellant was the lawful owner of the meat; that being the owner thereof he cannot be found to have stolen the meat. Appellant relies on Strauss v. United States (C.A.5) 376 F.2d 416, which reiterates the general rule that

> "where the defendant's proposed charge presents, when properly framed, a valid defense, and where there has been some evidence relevant to that defense adduced at trial, [the] charge must be given on that defense."

 The refusal of this instruction was not error. As shown in Part I above, the existence of title in the appellant was not a defense in this case. The requested instruction was an abstract declaration of irrelevant law, which was not material to a valid defense and submitted no factual theory of a defense. It was not error to refuse the requested instruction. Ryan v. United States (C.A.9) 314 F.2d 306.

## III

 In his third assignment of error appellant argues that the Court erred in denying his motion for judgment of acquittal on Count I "as there was no evidence to show that defendant knew the goods were stolen prior to the commencement of the interstate transportation." This assignment is without merit. Section 2314 is violated if goods are stolen in course of transportation and thereafter transported in interstate commerce, even if the goods were not stolen before commencement of the journey. Lyda v. United States (C.A.5) 279 F.2d 461. In the *Lyda* case the defendant independent trucker received a load of pecans at Natchitoches, Louisiana, for transportation to Waycross, Georgia. He apparent-

ly started to Georgia. At Alexandria, Louisiana, he decided to "expropriate" the pecans and take them to Texas and sell them, all of which he proceeded to do. The principles of the *Lyda* case are directly in point and demonstrate the unsoundness of appellant's contentions. Here, as in the *Lyda* case, the appellant decided, at Sioux City, Iowa, to steal and sell the meat. Thereafter he transported to Texas the portion of the stolen meat not sold by him in Iowa. Appellant relies on Loman v. United States (C.A.8) 243 F.2d 327, Wolk v. United States (C.A.8) 94 F.2d 310 and United States v. Berger (C.A.2) 338 F.2d 485. None of these cases supports appellant's third assignment of error. Of the three cases cited, only the *Loman* case is remotely in point, and it is readily distinguishable on the facts. In the *Loman* case the act of stealing did not occur until the interstate journey had ended. The *Lyda* case is consistent with the *Loman* case and other cases relied on by appellant. This is illustrated by the following succinct and appropriate quotation from the *Lyda* opinion:

> "In determining this question, we may for our purposes assume what the jury perhaps did not—that the intention to appropriate the pecans did not come into being until the truck got to Alexandria—that is, that when initially received, it was the purpose to carry and deliver the goods to Georgia. For it is our view that if this subsequent action is regarded as embezzlement by one having lawful custody, this nevertheless made the goods 'stolen' at and before the interstate transportation to Texas commenced."

### IV

■ In his fourth assignment of error appellant contends that the trial court erred in giving appellee's requested instructions 8 and 12A, which failed to require that the government prove that "defendant knew the meat was stolen prior to the commencement of the interstate transportation at Mason City". For the reasons stated in Part III hereof, we hold that the requested instructions 8 and 12A were not based upon an erroneous legal theory. Therefore the giving of these instructions was not error.

Further, in connection with his fourth assignment of error, appellant argues that Count I of the indictment charges the Court submitted an offense of unlawful interstate transportation of stolen goods from Mason City, Iowa, not from Sioux City, Iowa, to Texas; that therefore appellant cannot be deemed guilty on appeal of unlawful interstate transportation of stolen goods from Sioux City, Iowa, to Texas, citing Stirone v. United States, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252.

■ Holding, as we do hereinafter, that no case was made against appellant on Count II, it is apparent that there is a variance in respect to the point of origin of the unlawful transportation between the indictment, instructions and presumably the verdict on one hand and the proof of the offense on the other hand. Every variance and every error in a criminal case, however, does not require reversal. Only if the variance or error is material, that is, affects the substantial rights of the appellant, is a reversal required. Section 2111, Title 28, U.S.C.; Rule 52, F.R.Cr.P.; Berger v. United States, 295 U.S. 78, 79, 55 S.Ct. 629, 79 L.Ed. 1314 (holding a variance not material). We hold that the variance in this case is not material. The defendant was fairly notified of the substance of the offense of which he was convicted. The relation between the charge in Count I and the offense of which proof was produced is so clear that appellant had adequate notice of the charge and is protected against another prosecution for the same offense. The effect of the instructions was to require the government to assume a greater burden of proof than the law required.

Under these circumstances the variance and error are harmless and do not affect the substantial rights of the de-

fendant. Berger v. United States, *supra*, rather than Stirone v. United States, *supra*, governs this case. A similar variance was held harmless in Gregori v. United States (C.A.5) 243 F.2d 47. In the *Gregori* case the indictment charged unlawful transportation of a woman in interstate commerce from Fort Worth, Texas, to Jacksonville, Florida. The proof showed that the defendant had transported the woman from Farmington, New Mexico, to Jacksonville, with a stop in Dallas, Texas. In holding the variance harmless in a collateral attack, the Court said:

"The indictment is thus sufficient to have withstood any direct attack that might have been made at the trial or appeal."

A similar ruling was made by this Court in Mellor v. United States (C.A.8) 160 F.2d 757, in which there was a variance in the charge and proof of the terminus of an unlawful interstate transportation.

For the reasons stated above, the fourth assignment of error is without merit.

### V

The last assignment of error is that the Court erred in denying appellant's motion for judgment of acquittal on Count II. Appellant contends that there was no substantial evidence to support the verdict of guilty on Count II. We find merit in this contention and reverse the judgment of conviction on Count II, and the order placing the appellant on probation on that count.

 Appellant offered no testimony at the trial. Therefore, the sufficiency of the evidence to support the conviction on Count II must be determined from the evidence offered by the government.

 In Count II appellant was charged with unlawfully obtaining by fraud and deception, from the platform and depot of Decker, in Mason City, Iowa, a load of meat of an approximate value of $9,400 which was a part of an interstate shipment of freight. The instruction, authorizing a verdict of guilty on this count, required the prosecution to prove beyond a reasonable doubt, among other things, that defendant obtained the meat on January 19 from the platform and depot by fraud and deception, with intent to convert the meat to his own use. The proof is clear and substantial on all essential elements required to be found by the instruction on Count II, with the possible exception of the existence of fraudulent intent at the time the meat was received. The question then is whether there is any substantial evidence to support a finding of fraudulent intention to convert when the meat was obtained from Decker. In determining this question, the following rules must be applied. The evidence and permissible inferences therefrom must be viewed in the light most favorable to the government. Latham v. United States (C.A. 8) 407 F.2d 1 (February 13, 1969) and cases therein cited; Cave v. United States (C.A.8) 390 F.2d 58, l. c. 69, cert. den. 392 U.S. 906, 88 S.Ct. 2059, 20 L.Ed.2d 1365; Koolish v. United States (C.A.8) 340 F.2d 513, cert. den. 381 U.S. 951, 85 S.Ct. 1805, 14 L.Ed.2d 724; Anderson v. United States, 318 U.S. 350, 63 S.Ct. 599, 87 L.Ed. 829. And proof by indirect or circumstantial evidence must be considered, for intent is provable by indirect or circumstantial evidence. Black v. United States (C.A.8) 309 F.2d 331, *cert. den.* 372 U.S. 934, 83 S.Ct. 880, 9 L.Ed.2d 765. The evidence, furthermore, can include extrajudicial admissions subsequent to the time of commission of the alleged offense. Opper v. United States, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101; Smith v. United States, 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192; Sansone v. United States (C.A.8) 334 F. 2d 287; Tingle v. United States (C.A.8) 38 F.2d 573.

 However, if the proof of the essential element of intent to defraud or deceive depends entirely on an extrajudicial admission of the defendant made

after the transaction alleged to be criminal, there must be independent evidence corroborating the essential admission. The reason for this rule is that the government will not be permitted to prove an essential element of the crime (or of the *corpus delicti*) solely by an extrajudicial admission of the defendant made after the commission of the alleged crime, unless the admission is corroborated by substantial independent evidence. Opper v. United States, *supra*; Smith v. United States, *supra*; Sansone v. United States, *supra*; Tingle v. United States, *supra*. (Corroboration by independent evidence is not required if the essential extrajudicial admission occurred before the criminal act. Warszower v. United States, 312 U.S. 342, 61 S.Ct. 603, 85 L. Ed. 876.)

■■■ Viewing the evidence and the permissible inferences therefrom in the light most favorable to the government, we do not find sufficient substantial direct, indirect or circumstantial evidence of fraud and deception prior to appellant's arrival at Sioux City, Iowa, on January 20, 1965.

The government submits that the following evidence supports the verdict: (1) "appellant called Personett and wanted to know if they had a load of meat for him for the Coast"; (2) "appellant actively recruited the trucking job and in every sense said he would bring the load to California when he agreed to take the job and said he would pick up the meat" (thereby making a "false representation"); (3) "appellant changed trailers in Sioux City"; (4) "he sold some meat there"; (5) "he then disposed of the remainder of the meat in Texas"; (6) "he told Mr. Pauly (in Texas) that he had purchased the meat in Iowa, since he had a load of produce to pick up in Texas and wanted to pay his expenses"; (7) appellant "at all times indicated by his conduct that he would comply with his orders as a trucker." To these items we add from the government's evidence (8) that appellant was in Sioux City on January 20 when he began negotiations to rent another trailer, and to secure repairs to his original trailer in which the meat was received at Decker's; (9) on January 20 appellant left the original trailer at a repair shop for repairs on its landing gear; (10) on the same day the original trailer was repaired and returned to appellant who was with an unidentified companion; (11) that on January 20, or 21, appellant rented for two weeks a trailer which was too small to carry the 40,000 pounds of cargo over the highways, and not in condition to make the trip to California from Sioux City; (12) that appellant converted and sold a substantial portion of the cargo in Sioux City, Iowa, and later in Dallas and Houston, Texas; (13) that in selling a part of the stolen meat to one Perry in Dallas in February 1965, appellant told Perry he bought the meat (in Iowa) for the purpose of speculation.

Considering each of these items of evidence alone, together, and in all possible combinations, there is no view which would justify the finding that the meat was obtained at Decker's by fraud under the uncontroverted circumstances of this case, unless the admissions in items (6) and (13) that he bought the meat to pay his expenses to Texas and for speculation are proof of the fraudulent intent.

In reaching this conclusion we agree with the government, that appellant would be guilty of fraud if he received the cargo at Decker's under a promise to deliver in California with an intention not to perform the promise. United States v. Herr (C.A.7) 338 F.2d 607. We fail to find, however, any basis in the evidence for finding that such a fraudulent intention existed when appellant received the meat at Decker's on January 19, 1965, except the later admissions that he bought the meat to pay his expenses and for speculation. It is assumed that these admissions would justify an inference that appellant intended to convert the meat when he received it at Decker's.

Because appellant did not cause the invoices and other documents to be prepared showing him to be the purchaser,

because appellant's trailer was shown by the prosecution to be in disrepair on January 20 at Sioux City, because there was no showing that it was in disrepair on January 19, because there was no evidence that the original trailer, on January 19, was too small or incapable of carrying the cargo to California, and because the movement westwards from Mason City to Sioux City was towards California, there appears no substantial evidence, other than the admissions, of the existence of fraudulent intent before appellant reached Sioux City. Except for the admissions and the events of January 20 and thereafter, every item of evidence listed above, considered alone, and in all possible combinations with inferences favorable to the prosecution, is not only presumably innocent but also wholly consistent with an intent of appellant to perform his agreement of carriage to California. Except for the admissions in items (6) and (13), no reasoning trier of the fact could find from this evidence beyond a reasonable doubt that appellant did not change his intentions to deliver when he found his original trailer in disrepair at Sioux City, delaying his journey and requiring additional cash for the expense of repair of the original trailer.

The repair and rental at Sioux City, and the dishonest transactions there, cannot be found on this evidence to have been planned by appellant on the day of receipt of the cargo unless the admissions in items (6) and (13) above are relied on.

The misconduct of appellant in Sioux City after January 19, 1965, is not reasonably contemporaneous with the alleged fraud of the previous day so as to justify an inference of intent to defraud on receipt of the cargo the previous day. It is, however, substantial evidence of stealing, an element of the offense charged in Count I, as pointed out above.

■■■ Except for the extrajudicial admissions, innocence and guilt of fraud on receipt of the cargo are equally inferable or deducible from the events in Sioux City on the following days considered separately, together or in possible combinations. In such circumstances the burden of proof of guilt of the charge in Count II has not been met. Estep v. United States (C.A.10) 140 F.2d 40, 1. c. 45. 1 Wharton's Criminal Evidence, § 93, p. 187 (12th ed. 1955). Cf. Lyda v. United States, *supra*. In the *Estep* case the rule is stated as follows:

"* * * Often the line between honest belief and purposeful misrepresentation is fine and indistinct, between the two however lies guilt or innocence, and where the evidence is evenly balanced between guilt and innocence, a conviction cannot stand." 140 F.2d 1. c. 45.

■■■ In other words, unless the extrajudicial admissions in items (6) and (13) may be considered, there has been a failure to prove that fraudulent intent existed at the time the alleged unlawful receipt of the cargo occurred. For ordinarily the criminal intent and the criminal act must concur in point of time. "An act done without criminal intent does not become a crime by virtue of the fact that the defendant thereafter had the necessary intent." 1 Wharton's Criminal Law and Procedure (1957 ed.) § 63, pp. 139, 140.

This brings us to a decision of the crucial question whether items (6) and (13) are sufficient evidence from which fraudulent intent on January 19 may be inferred. If the statements that appellant bought the meat to pay his expenses to Texas and for speculation may be considered as evidence that appellant intended, at the time of receipt of the meat, to convert the meat for sale on his own personal account, the appellant is not entitled to acquittal on Count II. The portion of the statement that appellant *bought* the meat is obviously self-serving and of no assistance to the government. But this portion may be ignored and the damaging portions of the statements concerning paying expenses to Texas and speculation may be treated as admissions. Opper v. United States, *supra*.

The damaging admissions made long after the alleged criminal act, however, are not corroborated by any substantial

independent evidence. There is no other proof of the existence of the essential element of fraudulent intent at the time of the receipt of the meat on January 19. Except for the subsequent uncorroborated admissions, there is no proof that appellant committed the crime charged in Count II. Under the rule of the *Opper, Smith* and *Sansone* cases, cited above, an uncorroborated admission, made after the transaction, cannot be considered as proof of the essential element of fraudulent intent at the time of receipt of the meat, necessary to establish the *corpus delicti*. Therefore, the judgment of conviction and order of probation on Count II should be reversed. Tingle v. United States, *supra*.

This case is unlike cases in which unexplained possession of a recently stolen automobile will support an inference of knowledge that the automobile was stolen. Cf. Bollenbach v. United States, 326 U.S. 607, 66 S.Ct. 402, 90 L.Ed. 350. Here the lawful possession by appellant was explained, and the property was not shown to be stolen prior to the conversion at Sioux City. Nor was appellant shown to be practicing a scheme to defraud, by inferences from prior similar misconduct. Cf. II Wigmore on Evidence § 315, page 217; Von Feldt v. United States (C.A.8) 407 F.2d 95 (February 11, 1969).

This case is distinguishable from cases like Sansone v. United States, *supra*, in which there was substantial independent evidence corroborating the admission.

Under the circumstances it is unnecessary to determine whether, when the meat was received it was part of an interstate shipment, or whether at any time appellant was guilty of the possession of goods known to be stolen from an interstate shipment in violation of Section 659, Title 18, U.S.C. Cf. Latham v. United States, *supra*. This latter offense was not charged in the indictment.

### Conclusion

For the reasons stated above, the judgment of conviction and sentence on Count I is affirmed, and the judgment of conviction and order of probation on Count II is reversed and vacated. This cause is remanded for further proceedings consistent with this opinion.