UNITED STATES of America, Appellee,

v.

Charles Francis FRAZIER, Appellant.

No. 76–1476.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 15, 1976.

Decided Dec. 1, 1976.

Certiorari Denied Jan. 25, 1977.

See 97 S.Ct. 823.

Michael E. Marr, Baltimore, Md., for appellant.

Paul Zoss, Asst. U. S. Atty., Des Moines, Iowa, for appellee; Allen L. Donielson (formerly U. S. Atty.), Des Moines, Iowa, on the brief.

Before LAY, ROSS and STEPHENSON, Circuit Judges.

STEPHENSON, Circuit Judge.

Appellant Charles Francis Frazier appeals from his conviction by jury on three counts. Count I charged Frazier with the interstate transportation of falsely made, forged or counterfeited securities from

Washington, D.C. to Des Moines, Iowa (18 U.S.C. §§ 2314 and 2). Count II charged Frazier with the interstate transportation of implements used or fitted to be used in falsely making, forging, altering or counterfeiting securities or parts thereof from Washington, D.C. to Des Moines, Iowa (18 U.S.C. §§ 2314 and 2). Count III charged Frazier with conspiring with Joseph P. Dudzik to violate 18 U.S.C. § 2314 (18 U.S.C. § 371). The district court[1] sentenced appellant Frazier to ten years imprisonment on Count I, ten years imprisonment on Count II, and five years imprisonment on Count III, with the sentences to run concurrently. Appellant Frazier alleges: (1) the district court erred in overruling appellant's motion to suppress evidence seized from his rented auto; (2) the district court erred in denying appellant's motion for acquittal which was based on variance between the indictment and proof; and (3) the district court erred in failing to grant appellant's motion for judgment of acquittal based on insufficiency of the government's evidence as to the element of interstate transportation. We affirm.

Appellant first contends that his motion to suppress should have been granted in that the execution of the search warrant for appellant's rented automobile was predicated upon an illegal arrest.[2] Appellant argues that since the detention was an unlawful invasion of Frazier's right to privacy, it was a primary illegality that tainted the evidence obtained through the execution of the search warrant. The tainted evidence was derived from the exploitation of the illegal detention and, therefore, according to appellant should have been suppressed under *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

It is clear from the evidence adduced at the suppression hearing, however, that probable cause to arrest Frazier existed at the time he was taken to the Federal Bureau of Investigation headquarters. Frazier had been followed through the states of Wisconsin and Iowa by the FBI over a period of several months as he established a variety of unusual banking transactions. Although the banking transactions appeared to be legal on the surface, they closely paralleled a prior check switching scheme for which Frazier had been convicted.[3] As a part of this scheme Frazier would enter a bank and establish an account. Thereafter he would return to the bank and present a check to the bank officer for approval, which was done by initialling. Then he would substitute a large counterfeit check bearing the forged initials of the bank officer. On October 24, 1975, the Des Moines Federal Bureau of Investigation office was informed by another agent that Frazier was flying to Des Moines using the name of W. Parker. He was observed at the Des Moines airport where he rented a car and proceeded to visit five area banks. At each bank Frazier purchased cashier's checks in the name of Marcus Thomas with R. Rowland as the payee. The agents lost surveillance of Frazier for approximately three hours before Frazier flew back to Baltimore late that afternoon. On November 13, 1975, the day Frazier's rented car was searched, two Des Moines banks notified the FBI office that they had just cashed cashier's checks payable to an R. Rowland. Agents were immediately sent to several other local banks. A call was placed to the rental car agency at the Des Moines airport and it was reported that Frazier had rented a car earlier in the day. One of the agents shortly thereafter observed a person enter a bank who fit the description of R. Rowland given by the two Des Moines banks. This person (Frazier's accomplice) had a check initialled by a bank

---

1. The Honorable William C. Hanson, Chief Judge, United States District Court for the Southern District of Iowa.

2. Although the government argues that Frazier was never arrested, we assume arguendo that Frazier's detention was equivalent to an arrest.

3. At the time of the surveillance the FBI was aware that Frazier was on parole and that the terms of the parole restricted his travel to the state of Maryland.

officer and then had a $10 bill cashed. As the agent proceeded to the teller counter, he saw the accomplice look back at him and take off running. Frazier was outside of the bank during this time standing near the rented automobile. When Frazier observed the agent chasing his accomplice, he turned and ran from the car. Moments later he turned again and opened the door on the driver's side of the car and attempted to enter the vehicle. At that point the agent arrived and patted down both individuals. After the agent requested them to walk across the street to the bank for additional questions Frazier fled from the scene. He was later found by two agents hiding in a nearby parking lot. He was then taken to the FBI headquarters and a search warrant was issued approximately four hours later. A search of Frazier's rented automobile produced a case containing counterfeit cashier checks totalling in excess of $500,-000 and counterfeiting paraphernalia including "a pane of glass with some rubber outline on it" and "some artist's tracing pads."

■ In light of the facts and circumstances known to the officers prior to Frazier's detention, a man of reasonable caution would have been warranted in believing that an offense was being committed. Therefore probable cause existed for a warrantless arrest by authorities. *See United States v. Green*, 525 F.2d 386, 389–90 (8th Cir. 1975). It follows that appellant's contention of an illegal arrest is without merit.

■ Furthermore, based on these facts and circumstances, there was probable cause to search Frazier's rented automobile. The agents could have either seized and held the car before presenting the probable cause issue to a magistrate or carried out an immediate search without a warrant. *Chambers v. Maroney*, 399 U.S. 42, 52, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). The au-

thorities chose to present the facts before a magistrate and a search warrant was obtained.[4] Under these circumstances there is no valid objection under the Fourth Amendment to the evidence seized from Frazier's rented automobile. Consequently, appellant's motion to suppress was correctly denied by the district court.

■ Appellant Frazier secondly contends that the variance between the indictment and proof at trial constitutes reversible error. In both the first and second counts of the indictment Frazier was charged with interstate transportation of contraband originating from Washington, D.C. At trial the government's evidence showed the origination point to be the Washington National Airport which is located in the state of Virginia. Appellant maintains that this variance is material. In the alternative he argues that even if the variance is not material, it is still fatal because appellant is not protected against double jeopardy. Appellant cites *Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960), for its discussion of a material variance. In that case the defendant was charged with interference with interstate sand shipments into Pennsylvania in violation of 18 U.S.C. § 1951. The evidence at trial also showed interference with steel shipments exported from Pennsylvania. The district court charged the jury that guilt could result from either type of shipment. The Supreme Court held that the result was a material variance since two different kinds of commerce were involved. In the instant case the slight variance concerns the origination point of the interstate movement rather than two different kinds of commerce. Viewed in this light the case is similar to *Gay v. United States*, 408 F.2d 923 (8th Cir.), *cert. denied*, 396 U.S. 823, 90 S.Ct. 65, 24 L.Ed.2d 74 (1969). In *Gay* there

---

4. The affidavit for the search warrant also reveals that Frazier had been observed on October 29, 1975, with an unknown individual fitting the description of R. Rowland in Minneapolis, Minnesota. Upon their arrival they had rented a car and were then observed entering several banks where they unsuccessfully at-

tempted to cash $10 cashier's checks written to R. Rowland. Also, a visual observation of the rented automobile on November 13, 1975, by a special agent revealed that on the front seat were the same coat and hat worn by Frazier on his October visit to Des Moines.

was a variance regarding the point of origin of the interstate transportation of stolen property. The court held the variance was immaterial, noting that the defendant was fairly notified of the substance of the offense and was protected against another prosecution for the same offense. *Gay v. United States, supra*, 408 F.2d at 928. Similarly, we hold that the variance here is immaterial. Furthermore, appellant was protected against double jeopardy. *See Ashe v. Swenson*, 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). Therefore the variance is harmless and does not affect the substantial rights of the defendant. *See Berger v. United States*, 295 U.S. 78, 81–84, 55 S.Ct. 629, 79 L.Ed. 1314 (1935).

■ Finally Frazier contends that the government failed to adduce sufficient proof to establish the interstate elements in Counts I and II. As we stated in *United States v. McColgin*, 535 F.2d 471, 473 (8th Cir. 1976):

> In reviewing the sufficiency of the evidence we, of course, apply the well established rule that "[t]he verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680, 704 (1942), *cited with approval in Hamling v. United States*, 418 U.S. 87, 124, 94 S.Ct. 2887, 2911, 41 L.Ed.2d 590, 624 (1974). Likewise, we must accept as established all reasonable inferences from the evidence that tend to support the action of the jury. *United States v. Overshon*, 494 F.2d 894, 896 (8th Cir.), *cert. denied*, 419 U.S. 853, 878, 95 S.Ct. 96, 142, 42 L.Ed.2d 85, 118 (1974).

■ With this standard in mind, the government argues that there is substantial circumstantial evidence of interstate transportation when viewed in the light most favorable to the government. For instance, the evidence established that Frazier was involved in a scheme to cash counterfeit checks in various states including Wisconsin, Minnesota and Iowa. This in and of itself, however, would not be sufficient. It is the contents of the case found in the trunk of appellant's rented automobile which are decisive. Among other articles found in the case was an unused return portion of an airplane ticket from the trip made by appellant and Dudzik to Minnesota. This trip occurred on October 29, 1975, five days after appellant's first trip to Iowa. Therefore, if appellant's case had not traveled interstate with him, he would had to have carried the unused ticket on his person and placed it in the case upon his return to Iowa on November 13, 1975. The reasonable inference is, however, that the case and its contents had traveled interstate with appellant.

Furthermore, three counterfeit cashier's checks drawn on a Wisconsin bank were found in the suitcase. The government's documents expert [5] testified that the three checks contained initials forged from a bona fide $10 cashier's check payable to R. Rowland and drawn on a Wisconsin bank. The expert explained the somewhat complicated process involved and how the counterfeiting paraphernalia would be used in forging the initials. In light of this testimony the reasonable inference is that the forgery took place outside of Des Moines and not in the rented car or during the short time appellant was not under surveillance on October 24, 1975.

Finally, the case found in the trunk contained maps, travel guides and flight guides. Again the reasonable inference is strong that appellant was a traveler and that the case with its contents traveled with him.

Taking this substantial evidence in the view most favorable to the government and accepting as established all reasonable inferences from the evidence that tend to support the action of the jury, we conclude that there was sufficient evidence to establish the interstate elements in Counts I and II. Accordingly, the district court did not

---

**5.** It was stipulated at trial that this expert was eminent in his field.

err in failing to grant appellant's motion for judgment of acquittal.

Affirmed.